**In the Matter of David Warren WICKS.**

No. C0–85–48.

Court of Appeals of Minnesota.

March 26, 1985.

Review Denied May 31, 1985.

David L. Piper, Minneapolis, for respondent patient.

Thomas L. Johnson, Hennepin County Atty., John R. Owen, Asst. Hennepin County Atty., Minneapolis, for appellant petitioner.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

Wicks is a 45-year-old profoundly retarded ward of the state who has been a patient at Faribault State Hospital since 1947. Pursuant to legislative mandate, a new commitment petition was filed and a trial

held. There is no dispute that Wicks is retarded and committable. Appellant, Wicks' father, alleges that the trial court exceeded its authority by prescribing treatment at Faribault State Hospital, and by ordering Hennepin County to create a community placement.

We affirm in part and reverse in part.

## FACTS

Testimony was taken from Faribault employees Michael Bond, a group supervisor, and Ruth Wilkman, a social worker who is the Commissioner's representative responsible for Wicks because he is a ward of the state. Hennepin County social worker Mary Lee Blomgren testified about available community facilities and psychologist Robert Schauerhamer evaluated Wicks' needs.

The consensus of all who testified was that Wicks could be cared for in the community and because he is on medical assistance, placement outside Faribault would be financially possible. The practical problem is that there are no metro area facilities that will accept Wicks because he is unable to feed himself. Psychologist Schauerhamer, called as a witness by Wicks' attorney, testified that in his professional opinion Wicks has not been receiving, at Faribault, proper care and treatment best adapted according to contemporary professional standards. When questioned as to alternative placement, however, he could not name a facility which could accept David for treatment.

Because community facilities are usually private, they do not have to accept a patient.

The trial court found Faribault State Hospital is the least restrictive alternative which can meet Wicks needs and that "community facilities cannot provide the degree of care" he requires. The trial court further found that:

4. [Wicks] is capable of learning (a) to walk short distances without assistance of others and without falling, (b) to develop a vocabulary of identifiable sounds

which will permit some meaningful communication, and (c) to permit some friendly touching by others.

5. Faribault State Hospital is able and obligated to teach [Wicks] the foregoing skills.

6. The least restrictive ultimate placement for [Wicks] after learning the foregoing skills is (a) a comfortable environment in a home, community facility, or state hospital in (b) a congenial social milieu primarily associating with a small number of other patients, with provision for (c) his physical needs for food, clothing and medical care, (d) a regimen of daily activities which are reasonably interesting to him.

7. Hennepin County is able and obligated to place [Wicks] in his least restrictive ultimate placement as soon as he is capable of accepting the placement; if no such placement is available within a reasonable time after he is capable of accepting the placement, Hennepin County is able and obligated to initiate procedures to create an available placement.

The trial court ordered: 1) commitment to Faribault State Hospital; 2) the hospital to file a program plan for Wicks, prepared pursuant to Minn.Stat. § 253B.03, subd. 7 (1984); 3) Hennepin County to file a treatment report pursuant to Minn.Stat. § 253B.12, subd. 1, emphasizing progress made toward community placement; and 4) either party may move for an order to show cause for contempt directed at the employees or supervisors who submit the required reports.

## ISSUES

1. Whether the trial court properly committed Wicks to Faribault State Hospital?

2. Whether the trial court properly prescribed treatment to be undertaken by the Faribault State Hospital and the preparation of a program plan?

3. Whether the trial court properly ordered Hennepin County to prepare a treatment report and to place Wicks in a community facility or to create a placement?

4. What is the term of Wicks' commitment?

5. Whether the trial court properly threatened state hospital employees and Hennepin County employees with contempt?

## DISCUSSION

1. COMMITMENT TO FARIBAULT STATE HOSPITAL (FSH). The Legislature requires that all adult patients held under orders of guardianship have new commitment hearings pursuant to Minn. Stat. § 253B.08 by August 1, 1985. 1984 Minn.Laws ch. 623, sec. 10. If a trial court finds, by clear and convincing evidence, that a proposed patient is mentally retarded and that there is no suitable alternative to judicial commitment, the court shall commit the patient to the least restrictive treatment facility which can meet the patient's treatment needs. Minn.Stat. § 253B.09, subd. 1 (1984).

■ Respondent Wicks argues the trial court improperly committed him to Faribault State Hospital since his treatment needs cannot be met there. Commitment to a facility which cannot meet treatment needs is not proper under the statute. *Id.*

In Schauerhamer's opinion, the following areas of programming are available elsewhere for persons of Wicks' ability, and have not been offered to him during his 38 years at Faribault State Hospital:

1) To improve his ambulation. He had 17 injuries related to falls last year and requires one to one supervision.

2) Prelanguage skills.

3) Reduce frequency of regurgitation and rumination of food. No effort is presently made to decrease this behavior.

4) Reduce tactile defensiveness—He should be taught to accept some touching.

■ A report filed by the hospital on January 29, 1985 indicates that Faribault is attempting to teach Wicks the skills ordered by the court. The state hospital is obviously capable of meeting Wicks' needs although they have not done so in the past.

Generally, the right to treatment issue is not reviewed on appeal from a commitment order. *In re Kennedy*, 350 N.W.2d 484 (Minn.Ct.App.1984).

2. ORDER PRESCRIBING TREATMENT TO BE UNDERTAKEN BY FSH. The Minnesota Commitment Act sets forth the rights of patients, including the right "to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further custody, institutionalization, or other services unnecessary." Minn.Stat. § 253B.03, subd. 7 (1984). *The treating facility* must devise a written program plan which describes the patient's problems, goals, time for treatment, and the treatment measures to be used. That plan must be reviewed quarterly and modified as necessary. "The *commissioner* shall monitor the program plan and review process for regional centers to insure compliance with the provisions of this subdivision." *Id.* (emphasis added).

■ The trial court ordered the hospital to file a program plan with the court and to teach specified skills. Although we sympathize with the trial court's frustration at the lack of resources for Wicks, "the treatment of patients is properly raised before a hospital review board and not before the committing court." *In re Pope*, 351 N.W.2d 682, 683 (Minn.Ct.App. 1984). There is no provision in the statute for the trial court to directly monitor the treatment of patients.

3. HENNEPIN COUNTY TO PREPARE TREATMENT REPORT AND PLACE WICKS. Before the initial commitment period expires, "the *head of the facility* shall file a written report with the committing court" describing the diagnosis, the patient's anticipated discharge date, an individualized treatment plan, a description of the discharge planning process, whether the patient is in need of further care and treatment and whether the patient continues to satisfy the statutory requirements for commitment. Minn.Stat. § 253B.12, subd. 1 (1984) (emphasis added). Here, the trial court ordered *Hennepin County* to file the treatment report and to detail what

progress was made toward community placement.

■ The duty to file a treatment report is clearly that of the treating facility, and not Hennepin County. Further, Hennepin County is not a party to this proceeding. The Hennepin County Attorney represents the petitioner, Wicks' father.

The trial court also "found" that Hennepin County is obligated to place Wicks in "his least restrictive ultimate placement as soon as he is capable of accepting the placement; if no such placement is available within a reasonable time after he is capable of accepting the placement, Hennepin County is able and obligated to initiate procedures to create an available placement."

Social worker Blomgren testified at trial that there are no appropriate facilities in the metropolitan area, especially since Wicks is unable to feed himself. All facilities in this area have lengthy waiting lists. Wicks is not on any lists. This court previously held that commitment to a state hospital is proper where the less restrictive alternative offered by the patient is unable to accept the patient for at least five weeks. *In re Knapp*, 351 N.W.2d 391, 393 (Minn.Ct.App.1984).

Apparently, the trial court relied upon Chapter 623 in determining that Hennepin County may be ordered to initiate a community placement. That chapter requires that patients who do *not* satisfy the statutory commitment criteria will not be turned onto the streets, but shall be placed in the community.

If the committing court finds that the individual does not satisfy the commitment criteria set forth in Minnesota Statutes, section 253B, the court, by order shall immediately notify the county welfare board. The designated agency shall locate an appropriate community placement within 90 days of notification by the guardian. Until an appropriate placement is available, the ward may continue to reside in the regional center in

which the ward resided prior to the commitment hearing.

1984 Minn.Laws ch. 623, § 10. This session law requires the county to place patients who are not "commitable" but who have been living in the state hospitals.

 Wicks clearly meets the commitment criteria. The only question is where he shall be placed. There is no statutory authority for ordering Hennepin County to *create* a community placement when all community placements are currently full, or will not accept Wicks. Discharge planning will be monitored at the six month review hearing and by the hospital review board.

4. TERM OF INITIAL COMMITMENT. The Legislature required that an initial commitment petition be brought pursuant to Minn.Stat. § 253B.08 (1984). Accordingly, the patient may not be committed for more than six months. Minn.Stat. § 253B.09, subd. 5 (1984). At the end of six months, the hospital files its treatment report, a review hearing is held, and a final determination is made on the petition. Minn.Stat. § 253B.12. "If the court finds upon review of the treatment report that the person continues to be mentally retarded, it shall order commitment of the person for an indeterminate period of time, subject to the reviews required by [statute] and subject to the right of the patient to seek judicial review of continued commitment." Minn.Stat. § 253B.13, subd. 2.

The trial court did not state the term of Wicks' initial commitment, but under the statute it is six months.

5. THREAT OF CONTEMPT. Hennepin County had no obligation to file a treatment report, which must be filed by the treating facility according to statute. The patient's right to treatment and his program plan are to be monitored by the commissioner, and not directly by the courts. The treatment review boards established under Minn.Stat. § 253B.22 are the proper forum for determining whether Wicks is being properly treated. The threat of contempt was error.

**DECISION**

Because Wicks is mentally retarded and there is no suitable alternative to judicial commitment, the trial court properly committed him to FSH. The trial court erred in prescribing a treatment program, ordering the county to prepare treatment reports and to create a community placement for Wicks, and in threatening State and county employees with contempt.

Affirmed in part and reversed in part.