In the Matter of William G. HARHUT, Jr.

In the Matter of Vicki BUECHLER.

In the Matter of Jayne, FREDERICKSON.

In the Matter of Paulette GAZDA.

In the Matter of Susan CAMPBELL.

In the Matter of Susan CORR.

Nos. C0–85–339 to C4–85–344.

Court of Appeals of Minnesota.

May 14, 1985.
Review Denied June 27, 1985.

Stephen Radtke, Minneapolis, for respondent Harhut.

Thomas L. Johnson, Hennepin Co. Atty., John R. Owen, Asst. Co. Atty., Minneapolis, for all appellants.

Patrick W. Kelly, Minneapolis, for other respondents.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

All six patients are mentally retarded wards of the State residing at Faribault State Hospital. Pursuant to legislative mandate, new commitment petitions were filed for each patient. After individual hearings, all were committed back to Faribault. Appeals were filed by the commitment petitioners from the orders for commitment and notices of review were filed by all of the patients except Harhut. We affirm in part and reverse in part.

## FACTS

William Harhut, Jr. has been a patient at Faribault State Hospital since July 1, 1980. In addition to his retardation, the patient is blind and his behavior includes autistic features. By order dated November 23, 1984 the trial court found Harhut is capable of learning basic living skills, although he is poorly motivated. The court ordered Faribault to teach Harhut to dress, wash, eat and to care for his personal needs.

Vicki Buechler has been at Faribault since July 18, 1960. She is more severely retarded than Harhut and is also blind. The trial court found she is capable of learning to feed herself with one-to-one supervision, to indicate when she needs the

toilet, and to become less aggressive, if treated with medications. By order on November 20, 1984 the trial court committed Buechler to Faribault, ordered the hospital to teach her specific skills, and denied the patient's motion to join Hennepin County as a party.

Jayne Frederickson has been at Faribault State Hospital since April 22, 1968. By order dated January 16, 1985 the trial court found Frederickson engages in self-injurious behavior, is unable to communicate except with a few signs, and eats inedible objects, including poisonous substances. The patient was committed to Faribault State Hospital and the hospital was ordered to teach her "to reduce and cope with the problems" enumerated in the order.

Paulette Gazda has been at Faribault State Hospital since 1960. She requires direct supervision to insure that she uses the toilet, bathes, dresses properly, and eats regularly. She has difficulty in communicating, except with a few signs, and is aggressive towards others, including slapping and spitting. By order dated November 20, 1984 the trial court ordered Faribault State Hospital to teach Gazda to control her aggressions and to better remember her basic needs.

Susan Campbell has lived at Faribault since April 1960. The trial court found she was capable of learning to feed and dress herself, use the toilet and provide for her personal hygiene if prompted and supervised, and to communicate minimally. The November 19, 1984 order of commitment requires Faribault to teach her those skills.

Susan Corr, a patient at Faribault since December 20, 1965, is dependent on hospital staff to provide all daily needs and is unable to communicate except for a few sounds and motions which the staff has learned to interpret. By order dated November 19, 1984 the trial court found Faribault State Hospital must teach Corr to provide for her own essential daily needs, with prompting and supervision, and to develop a large enough vocabulary of interpretable sounds to allow communication with non-professionals.

The Harhut commitment order provides that the least restrictive ultimate placement for him is "a comfortable environment in a community facility" with a small number of other patients and continuous supervision. The other commitment orders state the least restrictive ultimate placement for each patient after learning the specified skills is "a comfortable environment in a home, community facility, or state hospital" with supervision and a small number of other patients. Each order requires Hennepin County to place the patient in the least restrictive ultimate placement as soon as possible and provides that, if no placement is available "within a reasonable time" after the patient is capable of being placed, the County must "initiate procedures to create an available placement."

Each of the commitment orders also specified (1) Hennepin County was to file a treatment report pursuant to Minn.Stat. § 253B.12, subd. 1, emphasizing progress made towards community placement, (2) Faribault State Hospital was to file a treatment plan with the court, rather than with the Commissioner of the Department of Human Services as required by Minn.Stat. § 253B.03, subd. 7, and (3) either party could seek a contempt citation directed at the employees or supervisors who submit the required reports. None of the orders specified the term of commitment.

## ISSUES

1. Were alternatives to Faribault State Hospital properly considered and rejected?

2. Should the trial court have required Hennepin County to prepare individual service plans and convene waivered services screening meetings?

3. Did the trial court err in admitting the testimony of examiners Meadows and Alberg?

4. Did the trial court err by refusing to join Hennepin County as a party?

## ANALYSIS

The issues raised by appellants have all been resolved by a recent opinion. *In re*

*Wicks,* 364 N.W.2d 844 (Minn.Ct.App.1985). We there held the trial court exceeded its authority in (1) prescribing specific treatment to be undertaken at Faribault State Hospital, (2) requiring the hospital to file a program plan with the court to permit it to monitor treatment, (3) requiring Hennepin County to prepare the treatment report and to initiate procedures to create a community placement, and (4) threatening state hospital and county employees with contempt. We also found the term of the initial commitment is no more than six months, although the term was not specified in the *Wicks* commitment order. Our holding in that case is equally applicable to the issues raised by appellants in this case.

1. The patients argue the trial court gave insufficient consideration to alternatives to judicial commitment and should have listed alternatives to the State Hospital which it considered and rejected.

■ If the trial court finds, by clear and convincing evidence, that the proposed patient is mentally retarded, and considers and rejects alternatives to judicial commitment, it must commit the patient to the least restrictive treatment facility which can meet that patient's treatment needs. Minn.Stat. § 253B.09, subd. 1 (1984). The trial court must consider:

> reasonable alternative dispositions, including but not limited to, dismissal of petition, voluntary outpatient care, informal admission to a treatment facility, appointment of a guardian or conservator, or release before commitment[.]

*Id.*

It is clear these patients could not consent to voluntary care or informal admission. The 1984 legislature specifically ordered new petitions for each of the patients, all of whom concede they are mentally retarded as defined by the statute, so dismissal of the petitions was inappropriate. See, 1984 Minn.Laws, ch. 623, sec. 10.

■ Respondents argue the trial court "could have stayed the execution of any commitment" and required the Department of Human Services to initiate community placement under the "waivered services" process. Briefly, that process is aimed at de-institutionalizing mentally retarded persons by identifying their needs and designing a placement or program to meet those needs outside of the state hospital system. Respondents' own experts testified that process would take six months. Under the circumstances, we cannot agree the trial court erred by rejecting alternative dispositions and ordering commitment.

■ In a related argument, respondents urge reversal because the findings did not "discuss" facilities other than the state hospital which were considered by the trial court and do not "indicate its reasons for rejecting them." The statute requires the trial court to list less restrictive alternatives considered and rejected and the reasons for its decision. Minn.Stat. § 253B.09, subd. 2.

Each of the commitment orders specified that community facilities were unavailable or could not meet the patient's needs. Respondents argue the trial court was obligated to consider the waivered services process. However, an alternative process which would take six months before placement of the patient is not an *available* alternative at the time of the commitment hearing and the trial court was not statutorily required to specify its reasons for rejecting that process. *Cf. In re Knapp,* 351 N.W.2d 391 (Minn.Ct.App.1984) (treatment facility with five-week waiting list properly rejected in favor of state hospital).

2. The patients argue the trial court should have required preparation of individual service plans and convening of waivered services screening meetings.

The counties of this state are required to provide case management services to retarded citizens. Minn.R. 9525.0040 (1983); *see* Emergency Rules, 9 S.R. 1098–1109 (adopted November 19, 1984) (to be codified at Minn.R. 9525.0015–.0145 [Emergency]). At a minimum, a case manager must assess the services needed by the retarded person, develop a service plan to meet those needs, convene a screening team, insure that the person receives the services

or that a facility or program is developed to meet the needs, and to monitor and review the provision of services. 9 S.R. 1101. Failure of the county to provide case management services may be appealed to the Commissioner of Human Services. 9 S.R. 1107.

We recognize the obligation of Hennepin County to comply with the rules promulgated by the Department of Human Services, but the trial court did not err in refusing to make compliance with those rules a part of the commitment process or the orders for commitment.

3. Respondents contend the testimony of psychologists Chris Meadows and Thomas Alberg should have been excluded because they do not satisfy the statutory definition of examiners.

Minn.Stat. § 253B.02, subd. 7 (1984) defines "examiner" as a licensed physician or consulting psychologist who is "knowledgeable, trained and practicing in the diagnosis and treatment of" the patient's alleged impairment. Meadows, a licensed consulting psychologist, testified at the Buechler commitment hearing that he developed behavioral modification programs for brain damaged and retarded patients in Chicago for two years. Since arriving in Minnesota in 1980, Meadows has directed a social skills training program for the retarded and worked with individual patients on behavioral modification and psycho-therapy.

Alberg testified at the Corr and Campbell commitment hearing. He is also a licensed consulting psychologist with consulting experience dealing with facilities which care for retarded residents.

Respondents' objections to the testimony were overruled with the observation by the trial court that the objections were more pertinent to the weight to be afforded the testimony than to its admissibility. We agree. "The sufficiency of the foundation to qualify a witness as an expert is almost entirely within the trial court's discretion." *In re Guardianship of Glenn*, 363 N.W.2d 348, 350 (Minn.Ct. App.1985).

4. Finally, respondents Buechler and Gazda argue the trial court erred by denying their motions to join Hennepin County as a party. Respondents argue the county is a necessary party if they are "to enforce their rights as patients and for de-institutionalization."

The judicial commitment process is separate from the administrative review of a patient's right to treatment and from the placement programs administered by the case manager and the Department of Human Services. Generally, the right to treatment is not reviewed on appeal from a commitment order. *In re Kennedy*, 350 N.W.2d 484 (Minn.Ct.App.1984). Respondents cite no reason related to their *commitment* for joinder of the county.

## DECISION

The trial court properly committed these patients to Faribault State Hospital. In accordance with our opinion in *In re Wicks*, 364 N.W.2d 844 (Minn.Ct.App.1985), we find the trial court erred in prescribing specific treatment programs, by ordering the county to prepare treatment reports and the hospital to submit a program plan to the court, by ordering the county to create community placements in a commitment order, and by threatening hospital and county employees with contempt. The trial court properly rejected alternatives to judicial commitment to the state hospital, admitted testimony by examiners Meadows and Alberg, refused to join the county as a party to the commitment hearings, and refused to order specific case management services.

Affirmed in part and reversed in part.