In the Matter of Deanna CIEMINSKI.

In the Matter of Paul HALVORSON.

In the Matter of Arnold ENNENGA.

In the Matter of Stephen NEMETH.

In the Matter of Richard CIEPIELINSKI.

Nos. C7–85–1021 to C4–85–1025.

Court of Appeals of Minnesota.

Sept. 17, 1985.

Review Denied Nov. 18, 1985.

**290**

Mark A. Gray, Minneapolis, for appellants Cieminski and Nemeth.

Beverly Balos, Supervising Atty. Legal Aid Clinic, Minneapolis, for appellants Halvorson, Ennenga and Ciepielinski.

Thomas L. Johnson, Hennepin Co. Atty., John R. Owen, Asst. Co. Atty., Minneapolis, for respondents.

Heard, considered and decided by PARKER, P.J., and FOLEY and LESLIE, JJ.

## OPINION

FOLEY, Judge.

All five appellants are mentally retarded wards of the state residing at Faribault State Hospital. New commitment petitions were filed for each appellant pursuant to legislative mandate. After full evidentiary hearings, at which each patient was represented by counsel, all were committed back to Faribault. The patients appeal the commitment orders. We affirm.

## FACTS

Deanna Cieminski is profoundly retarded and non-verbal. She is 26 years old and has resided at Faribault for 12 years. She lacks gross and fine motor control and requires a high degree of nursing care.

Paul Halvorson is 39 and has been at Faribault for 27 years. He is profoundly retarded, but can follow simple instructions. Halvorson becomes violent when angry, suffers severe seizures, and has very poorly coordinated motor skills.

Arnold Ennenga has lived at Faribault for 19 of his 26 years. He is severely retarded, but less impaired than Cieminski and Halvorson. He is able to follow directions well, has worked on the hospital grounds crew, and attends activities such as Boy Scouts and church services on the hospital campus without a staff escort.

Stephen Nemeth, age 26, is profoundly retarded and has lived at Faribault for 14 years. He is ambulatory, but non-verbal and autistic. He requires medication to control seizures.

Richard Ciepielinski has lived at Faribault for 32 of his 40 years. He is pro-

foundly retarded, but can respond to his name and very simple directions. He is aggressive toward other patients and staff and receives psychotropic medications to control this behavior.

The trial court found each appellant is mentally retarded and there were no suitable alternatives to commitment. The patients do not contest the finding of mental retardation. The trial court found each patient could be placed in a community facility if a facility able to meet their specific needs had an opening. Because of their needs and behavior, some of the patients will be more difficult to place, but no facility appropriate to the needs of any of them currently has an opening. The trial court committed all five patients back to Faribault State Hospital.

## ISSUE

1. Did the trial court properly reject state guardianship as an unsuitable alternative to judicial commitment?

2. Can Faribault State Hospital meet the treatment needs of these patients?

## ANALYSIS

1. The 1984 legislature required that all adult patients held under orders of guardianship have new commitment hearings pursuant to Minn.Stat. § 253B.08 by August 1, 1985. 1984 Minn.Laws. ch. 623, sec. 10. If the trial court finds a proposed patient is a mentally retarded person and,

> after careful consideration of reasonable alternative dispositions, including but not limited to, dismissal of petition, voluntary outpatient care, informal admission to a treatment facility, appointment of a guardian or conservator, or release before commitment as provided for in subdivision 4, it finds that there is no suitable alternative to judicial commitment, the court shall commit the patient to the least restrictive treatment facility which can meet the patient's treatment

needs consistent with Section 253B.03, subdivision 7.

Minn.Stat. § 253B.09, subd. 1 (1984).

Here, appellants argue state guardianship is a "suitable alternative to judicial commitment." The significance of their position is found by examining the State's authority to place its wards in state institutions. Before 1975, when all of these patients were originally made wards of the state, the state was authorized to place mentally retarded wards in state hospitals. This authority was revoked in 1975 and wards now cannot be placed in a state hospital for more than 90 days unless placed pursuant to a commitment order. Minn.Stat. § 252A.11, subd. 3 (1984), 1975 Minn.Laws. ch. 208, § 11. Appellants reason that guardianship is a suitable alternative to commitment, and since the state may not place its wards at Faribault for more than 90 days, the state must then find residences other than the state hospital for its wards. *See* Minn.Stat. § 252A.11, subd. 1(a) (1984).

■ We recognize Minnesota has placed a high priority "on the deinstitutionalization of the mentally retarded." *Swenson v. State*, 329 N.W.2d 320, 323 (Minn. 1983). We share that goal, and if the record established that community facilities will be available within 90 days, or that guardianship will meet the needs of these patients, we might agree that guardianship is a suitable alternative to commitment. It does not. Each appellant clearly requires long-range care and treatment and no community facilities capable of providing that care and treatment are currently available. Appellants' treatment needs will not be met by guardianship with a 90 day placement at Faribault State Hospital.

At oral argument, appellants' counsel asserted that state guardianship would result in continued placement at the state hospital until community facilities are available.[1] That is exactly the same result which follows from commitment. It is clear that

---

1. It should be noted here that because community facilities are usually private, they do not have to accept a patient. *In re Wicks,* 364

N.W.2d 844 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. May 31, 1985).

guardianship by the State of Minnesota is not an alternative to commitment and will not meet the needs of these patients. Under the facts of this case, the trial court did not err by rejecting guardianship, since it is not a suitable alternative to commitment of these patients.

■ 2. Appellants argue Faribault State Hospital is incapable of meeting their treatment needs and the trial court erred by committing them to the state hospital. Treatment issues are generally more properly raised before a hospital review board, rather than the committing court. *In re Wicks*, 364 N.W.2d 844 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. May 31, 1985). However, the trial court must commit patients to "the least restrictive treatment facility which can meet the patient's treatment needs consistent with section 253B.03, subdivision 7." Minn.Stat. § 253B.09, subd. 1 (1984). A patient committed under the Minnesota Commitment Act "has the right to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further custody, institutionalization, or other services unnecessary." Minn.Stat. § 253B.03, subd. 7. Although the trial court should not dictate treatment objectives, it must examine the potential for the patient's right to treatment to be met in a facility to which it commits the patient.

■ Experts offered by appellants criticized the past treatment received at Faribault State Hospital. The court's examiner recommended commitment to Faribault State Hospital. Appellants' medical records, submitted to the trial court, contained treatment programs and evaluations for each patient. The trial court found Faribault State Hospital was the least restrictive treatment facility. We will not reverse that finding unless it is clearly erroneous. *See* Minn.R.Civ.P. 52.01. On the basis of the conflicting evidence regarding the suitability of the state hospital, we cannot agree the trial court clearly erred by finding Faribault State Hospital is a proper treatment facility.

■ Faribault State Hospital is charged with a statutory duty to provide "proper care and treatment" and we will not excuse any failure to discharge that duty. Appellants' arguments do not convince us that hospital personnel are incapable of providing proper care. We further note that Hennepin County is charged with a duty to provide case management services to these patients. Minn.R. 9525.0060 (1983). Community placement or creation of a placement under the waivered services process may still be appropriate and that process must be monitored by the Commissioner of Human Services. *See* Emergency Rules, 9 S.R. 1098–1109, 1107 (adopted Nov. 19, 1984) (to be codified at Minn.R. 9525.-0015-.0145 [Emergency]). The commitment process is not the forum in which to enforce rights to case management and discharge planning for community placement. *In re Harhut*, 367 N.W.2d 628 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. June 27, 1985).

The language in *Wicks* is applicable here: There is no statutory authority for ordering Hennepin County to *create* a community placement when all community placements are currently full, or will not accept Wicks.

*In re Wicks*, 364 N.W.2d at 848. Our decision here is based upon our interpretation of the statute applicable to the facts of this case. We are not called upon to speculate whether constitutional due process might apply in a similar case.

### DECISION

Appellants were properly committed, after the trial court rejected guardianship as an alternative to commitment, to Faribault State Hospital, the least restrictive available treatment facility which can provide them with proper care and treatment.

Affirmed.