**In the Matter of Molly KELLOR.**

No. C5–94–618.

Court of Appeals of Minnesota.

Aug. 2, 1994.

Review Denied Sept. 28, 1994.

Michael A. Fahey, Carver County Atty., Duane A. Bartz, Asst. County Atty., Chaska, for appellant.

Nancy C. Platto, Chaska, for respondent Kellor.

Patricia M. Siebert, Minneapolis, for amicus curiae Mental Health Ass'n of Minnesota.

Considered and decided by KALITOWSKI, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

KALITOWSKI, Judge.

Molly Kellor, who was committed to the Willmar Regional Treatment Center (Willmar) as mentally ill, petitioned for transfer to the Laureate Psychiatric Clinic and Hospital (Laureate) in Tulsa, Oklahoma. Appellant Carver County Community Social Services seeks review of the district court's order committing Kellor to Laureate.

## FACTS

On January 20, 1993, the district court committed Kellor, who suffers from anorexia nervosa and recurrent major depression, to the University of Minnesota Hospital for six months. *See* Minn.Stat. § 253B.09, subd. 1 (1992). On June 16, 1993, the district court committed Kellor for another 12 months first to the University of Minnesota Hospital and, when medically stable, to Willmar.

Kellor was transferred to Willmar as a lifesaving measure because her weight was dangerously low. Although Willmar did not have a specific eating disorders program, their primary goal was to increase Kellor's body weight by providing a nutritious, five meals per day diet. Because Kellor did not eat the necessary amount of food, however, the staff began to force-feed her by using a nasogastric tube for approximately one-half of her meals. When Kellor strongly resisted forced-feedings, the staff sedated her with

Valium, used five or six people to hold her down, and used restraints when necessary. Although Kellor reluctantly cooperated with many of the forced-feedings, they were still required once or twice per week. In addition to refusing food, Kellor exercised excessively. To prevent this, the staff originally used restraints, then subsequently assigned a nurse to Kellor 12 to 16 hours per day, which did reduce the amount of time she exercised.

While at Willmar, Kellor's weight increased from the mid–70s to approximately 95 pounds. Additionally, group and individual therapy was available to Kellor for 15 hours and 2 hours per week, respectively. Although Kellor attended these sessions fairly regularly, she is still opposed to eating.

On February 1, 1994, Kellor filed a petition for review of her commitment pursuant to Minn.Stat. § 253B.17 (1992), requesting that she be transferred from Willmar to Laureate. At the hearing, Dr. Charles Yohe, a psychiatrist at Willmar, testified that he is not very familiar with the Laureate facility, but did not object to it. Yohe further testified that: (1) he believes Willmar is providing adequate treatment; (2) Kellor has a reasonable chance of progress, although it may take years to resolve her problems; (3) the relationship between Kellor and the staff was often acrimonious; (4) Willmar has had no success in changing Kellor's eating habits, except through the threat of force-feeding her; and (5) his main concern is that Kellor will lose weight if the Laureate program provides her with too much freedom.

Dr. Creighton McKowen, a licensed psychologist, examined Kellor three times, including an examination for the present proceeding. McKowen testified that: (1) Kellor and several staff members had conflicts that interfered with her treatment; (2) although Kellor's physical health appeared to be improved, her insight into her disease had not improved significantly; (3) the staff did not utilize any expertise in the treatment of chronic anorexia; and (5) although weight gain could be achieved at Willmar, long-term treatment was not available.

McKowen recommended inpatient treatment at Laureate, which has a program to treat individuals with chronic anorexia and provides a wide continuum of care. McKowen was convinced that without such treatment, Kellor would eventually die from anorexia. McKowen further testified that no Minnesota facility is comparable to Laureate and that no Minnesota facility could meet Kellor's needs.

The district court found that: (1) although Willmar was able to stabilize Kellor's physical health, it was unable to provide the necessary care for her chronic eating disorder; (2) no facility exists in Minnesota that can adequately meet Kellor's physical and psychological needs; and (3) Laureate was the least restrictive program or facility that will accept Kellor and that can appropriately treat her current condition. The district court ordered that appellant be transferred to Laureate when space became available, and that she participate in an in-state program in the interim.

### ISSUES

1. Did the district court improperly interfere with treatment decisions?

2. Did the district court err in concluding that no treatment facility in Minnesota could treat Kellor's illness?

3. Did the district court have jurisdiction to commit Kellor to an out-of-state facility?

### ANALYSIS

#### I.

■ Appellant contends the district court improperly interfered with treatment decisions by granting Kellor's petition for relief. We disagree.

■ Kellor petitioned for relief under Minn.Stat. § 253B.17, subd. 1, which provides:

Any patient * * * or any interested person may petition the committing court * * * for an order that the patient is not in need of continued institutionalization or for an order that an individual is no longer mentally ill, * * * or *for any other relief as the court deems just and equitable.*

(Emphasis added.) Thus, the district court has broad statutory authority to review commitments. *Id.*

■ If the district court finds there is no suitable alternative to judicial commitment, it must commit a patient to "the least restrictive treatment program which can meet the patient's treatment needs consistent with section 253B.03, subdivision 7." Minn.Stat. § 253B.09, subd. 1 (1992). All patients have

> the right to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further custody, institutionalization, or other services unnecessary.

Minn.Stat. § 253B.03, subd. 7 (1992). Although the committing court should not dictate treatment objectives or monitor treatment decisions, it should examine whether a patient's right to treatment can be met in a facility to which it commits the patient. *In re Kolodrubetz*, 411 N.W.2d 528, 534 (Minn. App.1987), *pet. for rev. denied* (Minn. Nov. 6, 1987); *In re Cieminski*, 374 N.W.2d 289, 292 (Minn.App.1985), *pet. for rev. denied* (Minn. Nov. 18, 1985).

We conclude the district court did not abuse its broad statutory authority in granting Kellor's petition. First, the evidence shows that although Willmar was able to increase Kellor's weight, it was unable to treat her chronic eating disorder. Moreover, Kellor's weight increase resulted, in part, from the invasive action of forced-feedings, sedation, and restraints. Second, the district court did not dictate treatment objectives or review treatment decisions. *See Kolodrubetz*, 411 N.W.2d at 535 (holding the district court should not have reviewed treatment recommendations). Instead, the district court determined, pursuant to its statutory mandate, that no facility in Minnesota, including Willmar, could meet Kellor's treatment needs. *See* Minn.Stat. § 253B.09, subd. 1 (the district court must commit a patient to "the least restrictive treatment facility which can meet the patient's treatment needs"). Third, because the present commitment period has expired, the district court would have authority to address the issue of an appropriate treatment program if a petition for continued commitment is filed.

*See* Minn.Stat. §§ 253B.12, subd. 4, 253B.13, subd. 1 (1992).

## II.

■ Appellant contends the district court erred in concluding that no treatment facility in Minnesota could treat Kellor's illness. We disagree. A district court's decision as to placement will not be reversed unless clearly erroneous. *See In re King*, 476 N.W.2d 190, 193 (Minn.App.1991) (holding that appellate court must affirm the district court's finding that there was no suitable less restrictive treatment alternative, unless the finding is clearly erroneous).

Appellant argues that the "right to treatment" does not mandate that a patient receive the "best" treatment, but only treatment "minimally adequate to provide him a reasonable opportunity to be cured or to improve his mental condition." *Bailey v. Noot*, 324 N.W.2d 164, 167 (Minn.1982) (quoting *Eckerhart v. Hensley*, 475 F.Supp. 908, 915 (W.D.Mo.1979)). Where, as here, the district court was presented with conflicting expert testimony as to whether Kellor could be treated at Willmar, the discretion accorded to the district court takes on special significance. *In re Joelson*, 385 N.W.2d 810, 811 (Minn.1986). The district court resolved the conflicting evidence in favor of Kellor, concluding that no facility in Minnesota, including Willmar, could provide the care necessary for Kellor's chronic eating disorder. The district court further determined that Laureate was the least restrictive program that would accept Kellor and that could appropriately treat her condition. We conclude the district court's decision is supported by the evidence and is not clearly erroneous.

Appellant further argues that Kellor should not be allowed to defeat commitment by refusing to cooperate with treatment. *In re Wolf*, 486 N.W.2d 421, 423 (Minn.1992). The evidence demonstrates, however, that Willmar's inability to treat Kellor's anorexia, as well as Kellor's refusal to cooperate, contributed to the conflict and lack of progress.

## III.

■ Appellant contends the district court did not have jurisdiction to commit Kellor to an out-of-state facility. We disagree.

Minn.Stat. § 253B.09, subd. 1, provides in part:

> In deciding on the least restrictive program, the court shall consider a range of treatment alternatives including, *but not limited to*, community-based nonresidential treatment, community residential treatment, partial hospitalization, acute care hospital, and regional treatment center services.

(Emphasis added.) Thus, the court has wide discretion in determining the least restrictive treatment program. *Id.*

The committing court's relationship with Kellor is continuing, regardless of whether she is placed out-of-state. *See In re Mullins,* 298 N.W.2d 56, 60–61 (Minn.1980) (holding an out-of-state court's placement of a child in Minnesota pursuant to Uniform Child Custody Jurisdiction Act does not affect the out-of-state court's jurisdiction over the child). We conclude the district court and appellant can adequately monitor reports from Laureate as provided in the district court's order.

Appellant also raises a funding issue. Because appellant did not raise this issue below, we need not consider the issue on appeal. *See Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 68 n. 2 (Minn.1979) (holding appellate court is limited to reviewing questions presented to and decided by the lower court). Moreover, the district court did not make any findings with respect to this issue. Because the responsibility for payment of mental health costs and services is subject to a complex scheme of statutes and rules, we are unable to address this issue based upon this record. *See In re Bowers,* 456 N.W.2d 734, 737 (Minn.App.1990).

## DECISION

The district court did not err in committing Kellor to an out-of-state facility where it found that no Minnesota facility can meet Kellor's treatment needs.

**Affirmed.**