*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0795**

In the Matter of the Civil Commitment of:
Gordon Emil Miles.

**Filed September 29, 2014
Affirmed
Cleary, Chief Judge**

Mower County District Court
File No. 50-PR-13-1225

Daniel T. Donnelly, Donnelly Law Office, Austin, Minnesota (for appellant Gordon Emil Miles)

Lori Swanson, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Austin, Minnesota (for respondent Mower County)

Considered and decided by Cleary, Chief Judge; Worke, Judge; and Rodenberg, Judge.

## UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Gordon Emil Miles challenges his commitment as a sexual psychopathic personality and a sexually dangerous person. He disputes the district court's findings that he committed acts of sexual misconduct and the finding that he had

an utter lack of power to control his sexual impulses. He also challenges his commitment to the Minnesota Sex Offender Program (MSOP), contending that it is not the least restrictive alternative, and he argues that the program does not offer a realistic opportunity for meaningful treatment. We affirm.

## FACTS

On June 6, 2013, respondent Mower County filed a petition to commit appellant as a sexual psychopathic personality (SPP) and a sexually dangerous person (SDP) shortly before his scheduled release from prison. The district court held a hearing at which evidence concerning all the relevant factors for commitment as an SPP and SDP was taken. The following summary relates primarily to the issues appellant raises in this appeal.

S., who was married to appellant in 1977, testified that appellant beat her and that he sexually assaulted her by forcing objects into her vagina. Appellant's younger daughter testified that she observed appellant sexually abuse S. with an object, and that appellant sexually abused her and her older sister by forcing them to perform oral sex and to fondle him. The sexual abuse of the younger daughter began prior to her fourth birthday; the sexual abuse of the older daughter started prior to her ninth birthday. Appellant's older daughter testified as to one instance of appellant abusing her; she did not recall any other incidents but explained that she may have blacked them out. Appellant denied sexually assaulting S. or his daughters. The district court credited the testimony by S. and appellant's daughters.

2

Appellant's former sister-in-law testified that in 1979, when she was seven months' pregnant, appellant and his friend went to her home and forced oral sex and intercourse on her. She testified that she complied out of fear for her safety. Appellant denied committing the offense, contending that he and his sister-in-law had a consensual affair and that after he broke it off, she reported the sexual assault. Appellant was charged with two counts of third-degree sexual conduct and the jury acquitted him. His friend was convicted separately of one count of third-degree sexual conduct. That sentencing court described the sister-in-law's testimony as convincing and, with respect to appellant's acquittal, stated that appellant's attorney had indicated the basis for the not-guilty verdict was that his sister-in-law had consented, not that the incident did not occur. The district court at the commitment hearing credited the official record and testimony by appellant's sister-in-law and found appellant's testimony was not credible.

In March 1985, a homeowner reported that someone had drugged and sexually assaulted her at a party that her roommates held at her home, although she did not remember what happened. She had awoken the morning after the party, naked and covered in her own blood and suffering from severe vaginal and abdominal pain and cramps. Appellant acknowledged being at the party, but at all times denied committing any offense and instead asserted that others had sexually assaulted her. Appellant was convicted of second-degree assault; the use of drugs to facilitate a crime; and first-degree criminal sexual assault. He was incarcerated until July 16, 1990, and his sentence expired on January 15, 1993. The district court found the official records credible and did not find appellant's testimony credible.

About two months later, in March 1993, appellant approached a six-year-old girl whose family resided in a trailer park owned by appellant and offered her candy. When she refused, he threatened to kill her, dragged her behind a nearby trailer, taped her mouth, and raped her. Her mother testified that she rushed her daughter to the hospital because she was bleeding heavily from her vaginal area. Physicians discovered abrasions and serious injuries in and around her vaginal area, requiring surgery at the Mayo Clinic. Appellant was convicted of three counts of first-degree criminal sexual conduct and sentenced to 30 years imprisonment. The convictions and sentence were upheld on appeal. *State v. Miles*, No. C4-94-1436, 1995 WL 265065 (Minn. App. May 9, 1995), *review denied* (Minn. June 29, 1995). At the commitment trial, appellant continued to deny committing the offense. The district court credited the testimony by the girl's mother and the official record and did not find appellant's testimony credible.

Dr. James Gilbertson, the court-appointed examiner, and Dr. Rosemary Linderman, the prepetition examiner respondent then hired as an expert, provided testimony and other evidence. Dr. Gilbertson diagnosed appellant with sexual abuse of an adult woman (anger/power/sadistic features rapist typology); sexual abuse of a child; unspecified paraphilic disorder; and personality disorder, NOS, with antisocial and borderline traits. Dr. Linderman diagnosed appellant with polysubstance abuse (currently in remission in a controlled setting) and antisocial personality disorder. Both addressed the statutory requirements and relevant case-law factors for commitment as SPP and SDP. Dr. Linderman offered the opinion, in relevant part, that appellant has an utter lack of power to control his sexual impulses, while Dr. Gilbertson opined it was arguable that

4

appellant does lack such control, stating that some but not all case-law factors were present. The court found the testimony of the two experts credible and persuasive, concluding that appellant has an utter lack of power to control his sexual impulses within the meaning of the SPP statute. The court also concluded that all of the other factors for commitment as an SPP and SDP were met.

On the topic of appellant's future treatment, appellant testified that if not committed, he planned to reside with relatives in the community, see a doctor and follow the doctor's recommendations, and attend AA meetings and find a sponsor, although he did not feel the latter was necessary. As to his reoffense prevention plan, he acknowledged there would be a transition and a lot of adjustments. Upon questioning by his attorney, he testified that he would participate in a "deniers" group in sex offender treatment and would also participate in chemical dependency treatment to see what he could learn.

Both Dr. Gilbertson and Dr. Linderman offered the opinion that appellant needed sex offender treatment in an intense and secure program, with MSOP being the only appropriate placement. They determined that appellant was a danger to society, did not have an effective relapse prevention plan, and is highly likely to reoffend if released. The court found that because appellant is highly likely to reoffend sexually without intensive sex offender treatment, it would be inappropriate to place him in the community. The district court further found that Dr. Gilbertson's and Dr. Linderman's testimony was credible and persuasive; that treatment in MSOP was an appropriate placement; and that

5

no less restrictive alternatives existed that would meet appellant's needs and the requirements of public safety.

The district court committed appellant as an SPP and an SDP to MSOP. This appeal followed.

# DECISION

In a petition for commitment as an SPP or SDP, the district court must find that the standards for commitment are met by clear and convincing evidence. Minn. Stat. § 253D.07, subd. 3 (Supp. 2013). "We review the district court's factual findings under a clear error standard to determine whether they are supported by the record as a whole." *In re Civil Commitment of Ince*, 847 N.W.2d 13, 22 (Minn. 2014). "We give due deference to the district court as the best judge of the credibility of witnesses." *In re Civil Commitment of Crosby*, 824 N.W.2d 351, 356 (Minn. App. 2013) (affirming commitment as SPP and SDP), *review denied* (Minn. Mar. 27, 2013). When the findings of fact are based "almost entirely on expert testimony, the district court's evaluation of credibility is particularly significant." *Id.* (quotation omitted). Legal issues, including whether the record contains clear and convincing evidence to support the district court's conclusion that the standards for commitment were met, are reviewed de novo. *Id.*

## I.

Appellant asserts that he did not commit any of the acts of sexual misconduct that the district court found he had committed. He argues that the district court accepted the

6

opinions of the experts as conclusive without considering his testimony in which he denied committing any of the offenses.

Commitment as an SPP requires, in relevant part, that the person engaged in "a habitual course of misconduct in sexual matters." Minn. Stat. § 253D.02, subd. 15 (Supp. 2013). Commitment as an SDP requires that the person "has engaged in a course of harmful sexual conduct." Minn. Stat. § 253D.02, subd. 16 (Supp. 2013).

The district court made extensive findings in support of its determination that appellant committed the acts of sexual misconduct based on the record. The court cited the testimony by witnesses, explaining explicitly why it found each witness's testimony credible, and it also relied on official records of appellant's convictions. The court considered and discredited appellant's testimony that he did not commit any of the offenses. We defer to the district court "as the best judge of the credibility of witnesses." *Crosby*, 824 N.W.2d at 356. We will not set aside the district court's findings that appellant committed the sexual offenses at issue because they are supported by clear and convincing evidence in the record and are not clearly erroneous. *See Ince*, 847 N.W.2d at 22.

As to the experts, Dr. Gilbertson and Dr. Linderman based their opinions solely on appellant's convictions and left it to the district court to determine whether the sexual offenses that did not result in convictions had occurred. Both testified that their opinions would be even stronger should the court find that appellant had committed the offenses that did not result in convictions. There is no merit to appellant's argument that the

district court relied on the experts' opinions to the exclusion of his own testimony in concluding that he committed the sexual offenses in question.

Appellant next contends that the district court specifically stated that he could not argue his innocence. The district court's actual statement to appellant's counsel was: "This Court is not in a position to find whether he is innocent of the convicted crime. That's what you want this Court to do, and I can't do it." The issue arose during appellant's testimony about his appellate and post-conviction challenges to his 1993 convictions for first-degree criminal sexual conduct for his offenses against the six-year-old girl. The district court's comments occurred after respondent objected to appellant "relitigating" the matter. The district court sustained the objection on the ground that the testimony was repetitious because appellant had previously given this testimony. Evidentiary rulings on "the cumulative nature of the evidence are committed to the sound discretion of the trial judge and will only be the basis for reversal where that discretion has been clearly abused." *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn. 1983). There is no showing that the district court abused its discretion in this ruling.

## II.

Next, appellant challenges the district court's finding that he demonstrated an utter inability to control his sexual impulses. Commitment as an SPP requires, in relevant part, that "the person has evidenced, by a habitual course of misconduct in sexual matters, an utter lack of power to control the person's sexual impulses and, as a result, is dangerous to other persons." Minn. Stat. § 253D.02, subd. 15. Appellant again contends that the

8

district court accepted the opinions of the experts as conclusive without any consideration of his testimony denying that he had committed sexual offenses.

Under the commitment statute, the district court, not the expert, must determine whether the statutory legal standards are met, although the assistance of experts may be required. *See In re Moll*, 347 N.W.2d 67, 70 (Minn. App. 1984) (reviewing commitment as mentally ill). Dr. Linderman offered the opinion that appellant has an utter lack of power to control his sexual impulses. Dr. Gilbertson found it arguable that appellant has an utter lack of power to control his sexual impulses because some case-law factors were present and others were not. As to one of these factors, he noted that he considered only the two victims whom appellant had been convicted of committing sexual offenses against, but that if the court found the other sex offenses were proven, as it did, he would consider the factor met.

The experts—and the district court—exhaustively addressed the various factors considered relevant in case law on this issue. *See, e.g., In re Blodgett*, 510 N.W.2d 910, 915 (Minn. 1994) (listing certain relevant factors). When the findings of fact are based "almost entirely on expert testimony, the district court's evaluation of credibility is particularly significant." *Crosby*, 824 N.W.2d at 356. There is no indication that the district court abused its discretion in relying on the experts' opinions as to utter lack of control, and its determination that appellant is utterly unable to control his sexual impulses was based on all of the evidence in the record, including appellant's denial that he committed any of the sexual offenses. The district court's findings are supported by clear and convincing evidence in the record.

**III.**

Appellant also challenges his commitment to MSOP for treatment on the ground that it would not provide him with a realistic opportunity for meaningful treatment. If the court finds by clear and convincing evidence that a person is an SPP or SDP, "the court shall commit the person to a secure treatment facility unless the person establishes by clear and convincing evidence that a less restrictive treatment program is available, is willing to accept the respondent under commitment, and is consistent with the person's treatment needs and the requirements of public safety." Minn. Stat. § 253D.07, subd. 3. "Thus, by statute, the burden of proving that a less restrictive alternative exists rests on" the committed person. *Ince*, 847 N.W.2d at 25.

Appellant did not propose a less restrictive treatment program that was willing to accept him under commitment and that would be consistent with his treatment needs and requirements of public safety. Instead, he testified as to his plans if he were not committed, in which case he planned to reside with relatives in the community, see a doctor and follow the doctor's recommendations, and attend AA and find a sponsor. Upon questioning from his attorney, he testified that he would participate in a "deniers" group in sex offender treatment and that he would attend chemical dependency treatment to see what he could learn. This testimony does not meet the statutory requirements outlined in section 253D.07, subdivision 3.

Appellant also contends that the district court failed to make sufficient findings as to less restrictive treatment options, noting only the testimony by Dr. Gilbertson and Dr. Linderman that no less restrictive alternatives were available. The supreme court

recently addressed the need for and the nature of findings of fact on the availability of a less restrictive alternative in a commitment as an SDP. *See Ince*, 847 N.W.2d at 25. "A constellation of competing concerns are posed by the choice between commitment to a secure treatment facility or to a less restrictive treatment program," in particular the individual's liberty interests and the state's interest in public safety. *Id.* (quotation omitted). Although there is no statutory definition for a less restrictive treatment program, the supreme court held that the district court must consider "a *proposed* less restrictive alternative in light of the objectives of commitment: the patient's treatment needs and the requirements of public safety." *Id.* at 26 (emphasis added) (quotation omitted). Appellant did not present evidence of a less restrictive alternative consistent with his needs and the requirements of public safety to which he could be committed. In light of the district court's findings and appellant's failure to meet his burden of proposing commitment to a less restrictive alternative, appellant cannot prevail in this argument.

Appellant argues for the first time on appeal that his participation in the intensive-supervised-release program of the department of corrections would provide adequate safeguards. Because he did not provide this plan to the district court, he cannot raise it for the first time on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988); *cf. Ince*, 847 N.W.2d at 25 (remanding for findings on proposed less restrictive alternative, where the committed person had provided evidence showing that his treatment needs could be met with ongoing therapy, intensive supervision through the department of corrections, and treatment in the outpatient community program).

11

Appellant argues that the district court erred in concluding respondent met its burden of proving by clear and convincing evidence that commitment to MSOP would provide appellant with a realistic opportunity for meaningful treatment, asserting that those involved in his commitment admitted he will not succeed. As both parties acknowledge, "a person may not assert his right to treatment until he is actually deprived of that treatment." *In re Martenies*, 350 N.W.2d 470, 472 (Minn. App. 1984) (rejecting claim in SPP appeal), *review denied* (Minn. Sept. 12, 1984). "Generally, the right to treatment issue is not reviewed on appeal from a commitment order." *In re Wicks*, 364 N.W.2d 844, 847 (Minn. App. 1985), *review denied* (Minn. May 31, 1985).

Appellant contends that his situation is distinguishable because Dr. Gilbertson conceded that he would not be treated as long as he continues to maintain his innocence. He cites testimony by Dr. Gilbertson that he would accept placement in less restrictive treatment programs if he were not committed. Further, he argues that Dr. Gilbertson would not have supported commitment if appellant were innocent of his crimes, as he asserts.

Appellant's summary of Dr. Gilbertson's testimony is incomplete. Dr. Gilbertson testified that those who are committed to MSOP are asked to sign a treatment contract requiring them to take certain responsibility for the acts committed, and that if appellant refused to sign it, he would be required to "sit." But Dr. Gilbertson also testified in that event, he might be transferred to another unit to work on other matters and he would then be asked "again and again" to sign the treatment contract. It would seem "somewhat

12

incongruous that a sexual offender should be able to prove he is untreatable by refusing treatment." *Blodgett*, 510 N.W.2d at 916.  Appellant's claim fails.

Finally, appellant contends that based on past precedent, he will never be released from the program if committed there and that the MSOP program is a prison in the guise of a treatment program.  Similar challenges have been raised in a federal class-action lawsuit and the federal court recently warned the Minnesota legislature that substantial changes in the sex offender civil commitment scheme must occur or court intervention would likely follow.  *Karsjens v. Jesson*, No. 11-3659, 2014 WL 667971, at \*28 (D. Minn. Feb. 20, 2014).  In any case, appellant did not raise the issue to the district court or present evidence on it, so he may not raise this issue for the first time on appeal.  *See Thiele*, 425 N.W.2d at 582.

**Affirmed.**