**In the Matter of Joyce NISKANEN.**

**No. CX–86–150.**

Court of Appeals of Minnesota.

April 1, 1986.

Larry E. Reed, Hassan & Reed, Ltd., Minneapolis, for appellant.

Thomas L. Johnson, Hennepin Co. Atty., Rick Osborne, Asst. Co. Atty., Minneapolis, for petitioner.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Joyce Niskanen appeals the trial court's refusal to dismiss a commitment petition on several grounds and the trial court's finding that she is a mentally ill person within the meaning of Minn.Stat. § 253B.02, subd. 13 (1984). We affirm.

## FACTS

Joyce Niskanen is a 64-year-old woman with a long history of mental illness. Niskanen was committed to the University of Minnesota Hospitals as a mentally ill person in June 1985 and provisionally discharged to the Baptist Residence, a nursing home. She continued under the care of university psychiatrists and was prescribed psychotropic medications. Before this commitment Niskanen had been living in her home, which had no water, plumbing, or electrical service.

The University Hospitals filed a new petition for commitment on November 4, 1985. Niskanen remained at the Baptist Residence as a voluntary patient pending trial. The petition was supported by the state-

ment of Niskanen's treating psychiatrist, Steven Genheimer. According to his statement, Niskanen has a delusional system centering on control by neighbors using rats and electrical impulses. Her psychosis had improved only mildly with medication, and her delusional system is "still very much intact." Her grooming habits are marginal, and her social interaction skills remained poor. He said she "desperately needs the structured setting of the nursing home for the foreseeable future because of her inability to take care of herself." The day the petition was filed the trial court ordered the Baptist Residence to deliver copies of all relevant medical records to the court and to Niskanen's attorney.

Niskanen's first examination by a court-appointed examiner was scheduled for November 7, to be followed by a settlement conference and probable cause hearing on the need to hold her under court order pending trial on the petition. On November 6 her attorney moved for an order (1) dismissing the petition, or (2) in the alternative, preventing the examiner from reviewing her medical records on the ground that the attorney had not yet received the medical records for inspection as required by *In re D.M.C.*, 331 N.W.2d 236, 238–39 (Minn. 1983). The motions were heard on November 7. Although no written motion on this basis appears in the file and the November 7 hearing was not transcribed, counsel apparently also sought dismissal on the ground that Genheimer's recommendation that Niskanen be placed in a nursing home, rather than a hospital, was insufficient to support a petition for commitment. Niskanen's examination was postponed pending the trial court's ruling.

By order of November 18 the trial court denied all motions. The court ruled that Genheimer's recommendation of placement in a nursing home was sufficient to support the petition. The trial court also ruled that counsel who want to review medical records before the examination must file a written demand with the court.

A new examination and probable cause hearing were scheduled for November 25.

The court ordered on November 22 that the University Hospitals turn over all of Niskanen's medical records to the clerk of court for use by the court-appointed examiner. The examination was again postponed to permit a hearing on Niskanen's renewed motions to dismiss the petition. Niskanen's attorney argued again that Genheimer's recommendation of commitment to a nursing home did not satisfy the statutory definition of a treatment facility. He also sought a protective order to exclude portions of the medical records at trial on relevancy grounds. The trial court denied the motions within one week after the hearing. The court found that the Baptist Residence satisfied the statutory definition of a treatment facility and that Niskanen's medical records were relevant because they document past attempts to treat her illness.

The examination and probable cause hearing were rescheduled for December 18. On December 17 Niskanen's attorney moved to dismiss the petition for failure to hold a trial within 14 days of filing of the petition. The examination and hearing took place on December 18 as scheduled. Niskanen's motion to dismiss was argued and denied. The trial court ruled that December 18 was the last day permitted by statute for trial of the action and ordered petitioner to present his case that day or the petition would be dismissed. The petitioner proceeded to trial.

The court-appointed examiner, psychiatrist David Anderson, testified that Niskanen suffers from paranoid schizophrenia. The disorder substantially affects her thoughts, which are delusional, and her perception and memory. As a result, Niskanen's judgment, behavior, reasoning and recognition of reality are grossly impaired. Based on Niskanen's demonstrated inability before her June 1985 commitment to care for herself and her continued need for help in grooming herself and eating properly while a patient at Baptist Residence, Anderson concluded Niskanen was unable to live independently. He recommended continued inpatient hospitalization and agreed the Baptist Residence may be a less

restrictive alternative than the state hospital if Niskanen's needs continue to be met there.

Mary Gillmore is the director of nursing at Baptist Residence. She testified that Niskanen continues to speak of her delusions about neighbors and rats. Gillmore said the Baptist Residence can offer Niskanen nursing care, food and shelter, assistance in making and keeping her appointments at the University of Minnesota, and will administer ordered medications. Niskanen has been placed in a program to improve her daily self-care, but has not made much progress. On the basis of her contacts with Niskanen three to four times each week and the reports of other nursing staff, Gillmore believed Niskanen would be unable to care for herself if released from a structured environment. The director of Baptist Residence testified the facility was willing to accept Niskanen and can meet her needs for a structured environment.

Niskanen appeals from the court's December 20 order for commitment, arguing the petition and supporting statement were insufficient, the proceedings should have been dismissed because her medical records were not provided to counsel before the first scheduled examination, the trial and examiner's statement were untimely, and the evidence was insufficient to support the court's order of commitment.

### ISSUES

1. Did the trial court properly deny appellant's motions to dismiss for an insufficient examiner's statement in support of the petition?

2. Did the trial court properly deny appellant's motion to dismiss because medical records were not provided to counsel before the first scheduled examination?

3. Was the trial timely held?

4. Does the evidence support the trial court's order for commitment?

### ANALYSIS

#### I

■ A petition for commitment must "be accompanied by a written statement by an examiner stating that he has examined the proposed patient within the 15 days preceding the filing of the petition and is of the opinion that the proposed patient is suffering a designated disability and should be committed to a treatment facility." Minn. Stat. § 253B.07, subd. 2 (1984).

The statement of Niskanen's treating psychiatrist supported the commitment petition. He identified Niskanen's need for the structured environment of a nursing home, coupled with the need for continued treatment at the University. Niskanen argues that Genheimer's recommendation of placement in a nursing home fails to satisfy the statutory requirement that a petition be supported by a recommendation of placement in a *treatment facility.*

A treatment facility is "a hospital, community health center, or other institution qualified to provide care and treatment for mentally ill" persons. Minn.Stat. § 253B.02, subd. 19. The Baptist Residence is an institution qualified to care for the needs Genheimer recognized; it can provide Niskanen with food and shelter, monitor her use of medication, and ensure her attendance at appointments with her psychiatrist. The statement is sufficient to support the petition, and the trial court properly denied appellant's motion to dismiss on this ground.

#### II

■ After a commitment petition has been filed, the trial court must appoint an examiner to evaluate the proposed patient. Minn.Stat. § 253B.07, subd. 3. In *In Re D.M.C.,* 331 N.W.2d 236, 238 (Minn.1983), the supreme court recognized that the examiner must have access to all "relevant, germane, and material" medical records. *Id.* at 238. The court set out the following procedure to ensure the availability of relevant medical records:

In conjunction with the filing of the petition for commitment with the court, petitioner shall secure a court order requesting the release of all available medical

records bearing on the condition potentially requiring commitment. The affected physicians and medical facilities shall deliver copies of the records forthwith to the trial court, or its designee. * * * Another copy of the requested records shall be sent at the same time to the proposed patient or to counsel, if he or she is represented by counsel. If the proposed patient or counsel determine that all or part of the medical records are not relevant and germane to the examination, timely application shall be made to the trial court for a protective order. The trial court shall grant the protective order in its discretion, if the age of the record or its contents persuade the court that it is not relevant and germane to the examination of the present condition of the proposed patient. All records to which the proposed patient raises no objection and which are not subject to a protective order shall be delivered to the examiner.

*Id.* at 238–39 (footnotes omitted). The supreme court suggested that most motions for protective orders be "made within 48 to 72 hours of the time when the affected records are received by the proposed patient or counsel." *Id.* at 239 n. 2.

On November 4, the same day the petition was filed in this case, the trial court ordered delivery of all relevant medical records from the Baptist Residence "with a copy to [Niskanen's] attorney." A similar order dated November 22 was addressed to the University of Minnesota Hospitals. The record is silent as to when Niskanen's attorney received them, but some time before trial he received the Baptist Residence records and a summary of the University Hospital records.

*In re D.M.C.* stands for the proposition that medical records should be available to the court-appointed examiner before the examination is performed. Dismissal of the petition would not have been appropriate at the time of Niskanen's motion because there was ample time to secure the records and make objections to their relevance before the examination. The trial court did not err in refusing to dismiss the petition on this ground.

■ The trial court's order refusing to dismiss the petition set out a procedure that, in the trial court's view, accommodates both the patient's right to review the medical records before the first examination and the court's practice of having the first examination take place on the date of the probable cause hearing, which is required within 72 hours for proposed patients held under a court order. *See* Minn. Stat. § 253B.07, subd. 6 and 7. The trial court placed the burden on the patient's attorney to file a written "demand for D.M.C. procedures:"

> Counsel will then be allowed 120 hours [five days] after the filing of the petition to examine the medical records and file a written "Notice of Suppression Hearing" specifying precisely what portions of the medical records she or he seeks to suppress. A Suppression Hearing will then be set within 192 hours [eight days] after the filing of the petition. The first examination will be scheduled within 264 hours [12 days] after the filing of the petition to allow the Court 72 hours to read the records and rule on the motion. A trial will be set within 336 hours [14 days] after the filing of the petition to allow the First Examiner 24 hours to prepare and file 3 copies of their reports and to allow counsel the statutory 48 hours to examine reports. If Notice of Suppression Hearing is filed, the first examination will be scheduled within 192 hours [8 days] and trial within 264 hours [12 days] after the filing of the petition.

We commend the trial court's efforts to hold probable cause hearings and trials as quickly as possible. However, we see no authority in *In re D.M.C.* for requiring the proposed patient to file a written demand to obtain her right to review the records and make appropriate objections. The petitioner has the burden of ensuring timely delivery of the medical records.

### III

Minn.Stat. § 253B.08, subd. 1, provides:

The hearing on the commitment petition shall be held within 14 days from the date of the filing of the petition. For good cause shown, the court may extend the time of hearing up to an additional 30 days. When any proposed patient has not had a hearing on a petition filed for his commitment within the allowed time, the proceedings shall be dismissed.

■ Although Niskanen remained voluntarily at the Baptist Residence, the petitioner sought an order to hold her there until the time of trial. *See* Minn.Stat. § 253B.07, subd. 7(d). The probable cause hearing on this motion and the first examination were postponed to December 18 because of the pre-trial motions made by Niskanen's attorney. At the probable cause hearing Niskanen's attorney moved for dismissal on the basis that the trial had not taken place within 14 days of November 4, the date the petition was filed.

The trial court ruled that hearings on Niskanen's pretrial motions to dismiss constituted good cause for a 30-day extension. Because December 18 was the 44th day from the filing of the petition, the trial court announced it would grant the motion to dismiss unless petitioner was ready to proceed to a hearing that day. The petitioner went to trial that afternoon. Niskanen now argues (1) the 30-day extension should have been granted, if at all, before 14 days had passed; (2) she was deprived of proper notice of the time and date of trial; and (3) she had insufficient time to review the examiner's report and decide whether to request a second examiner.

We find no authority to support appellant's argument that the trial court must grant the 30-day extension within 14 days after the filing of the petition. Counsel was aware of the need to postpone the trial to consider the motions and acknowledges the trial court's determination, on the record, that resolution of those motions constituted good cause for an extension of time.

■ Patients must generally be given "at least two days' notice of the time and date of the hearing, except that any person may waive notice." Minn.Stat. § 253B.08, subd. 2. Niskanen's attorney waived the statutory notice requirement on December 18 when he said, "[i]f we're not going to have a hearing this afternoon, I believe we're entitled to an outright dismissal of the Petition." Similarly, the examiner's report must generally be filed "not less than 48 hours prior" to commitment hearing, "[u]nless otherwise agreed by the counsel for the proposed patient[.]" Minn.Stat. § 253B.07, subd. 5. The examination occurred on the morning of December 18. Counsel had been informed of the right to a second examiner on November 4, when the petition was filed. Counsel raised no objection at trial to the short time between the examination and the time of hearing and may not raise that argument for the first time on appeal.

## IV

■ Finally, Niskanen argues the evidence is insufficient to support commitment. She contends the trial court improperly admitted medical records relating to her condition before her discharge in August 1985 and testimony by nurse Mary Gillmore.

Niskanen has been mentally ill for many years. The records of her past treatment are relevant to a determination of her present condition. *See In Re Malm*, 375 N.W.2d 888 (Minn.Ct.App.1985).

Mary Gillmore, the director of nursing at Baptist Residence, described Niskanen's behavior and conversations with staff while residing there. Niskanen argues on appeal that Gillmore was not qualified to offer an opinion on whether Niskanen was mentally ill. The trial court carefully restricted Gillmore's testimony to a recitation of statements made by Niskanen and an opinion as to Niskanen's ability to care for herself. Niskanen's argument that Gillmore was not qualified to give this testimony is unpersuasive.

The evidence at trial shows that Niskanen does not care for herself or eat properly without supervision. She has made little

progress in a program designed to teach her those skills. The court-appointed examiner testified Niskanen was not capable of independent living or caring for herself. The trial court need not wait until a patient is seriously harmed to find that a patient "poses a substantial likelihood of physical harm to himself or others as demonstrated by * * * a failure to provide necessary food, clothing, shelter or medical care for himself[.]" Minn.Stat. § 253B.02, subd. 13; *In Re Anderson,* 367 N.W.2d 107 (Minn.Ct. App.1985). The evidence supports the trial court's findings and order for commitment.

## DECISION

The trial court correctly denied Niskanen's motions to dismiss the petition. The evidence is sufficient to support the court's order of commitment to the Baptist Residence.

Affirmed.