**In re GUARDIANSHIP OF Rose GLENN, a.k.a. Rose A. Glenn.**

No. C0–84–1531.

Court of Appeals of Minnesota.

Feb. 26, 1985.

John A. Trenti, Virginia, for State Sur. Co.

Joseph M. Boyle, Jr., International Falls, for J. Robert Ryan.

Jerome W. Shermoen, International Falls, for Helene Melby, Personal Representative of Glenn Estate.

Heard, considered, and decided by WOZNIAK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal from a final accounting of a guardianship, wherein the trial court determined the guardian had wrongfully and negligently mismanaged the trust funds, disallowed his fees, and surcharged him $28,500. Appellant contends the evidence was insufficient to support the charge of mismanagement and that finding was in error. We reverse and remand.

## FACTS

Appellant J. Robert Ryan was appointed guardian of the estate and person of Rose Glenn on June 20, 1980, at her request. Glenn had lived with her sister, who had recently passed away. Glenn required nursing home care. The parties expected at the time of Ryan's appointment that the guardianship would be temporary. Originally Glenn's nieces, one of whom is the respondent as personal representative of Glenn's estate, intended to move Glenn to the metropolitan area. Although Ryan was never told of a change in plans, after six months it was apparent to Ryan this move would not happen. Glenn died in September 1982.

Ryan is an accountant, and was treasurer for the City of International Falls for 26 years. As treasurer, he invested city funds, often in increments of $100,000 to $300,000.

Ryan charged Glenn $50 per month for his services as guardian. He visited her almost weekly, and frequently conferred on her medical care. Ryan paid Glenn's expenses, which totalled over $40,000 during the thirty-month guardianship. Glenn's social security benefits and interest income were sufficient to meet her expenses without invading the principal, except $7,000 received from her sister's estate.

At the start of the guardianship, Glenn's estate totaled approximately $154,000. It included a savings account earning 5% and a no-interest checking account in Fenton, Michigan; a savings account and several certificates of deposit earning $5\frac{1}{4}\%$ to $7\frac{1}{4}\%$ in International Falls; a savings account and certificate earning at least $5\frac{1}{4}\%$ at Northwestern National Bank in Minneapolis; Series E bonds earning $6\frac{1}{2}\%$ to $8\frac{1}{2}\%$; and Series H bonds with the same interest rates.

In September 1980 Ryan attempted to withdraw the Michigan accounts by mail. He got a response asking for probate court records and a certificate of passbook loss. Ryan later found the passbook, but did not follow up on the bank's letter. He said Glenn had expressed a preference to retain the Michigan accounts.

In August 1981 Ryan cashed in the certificate at Norwest, transferring those funds and the Norwest savings account to a money market account in International Falls. In October 1981, he cashed in the Series H bonds, putting those funds in the same money market account. All other accounts were retained throughout the guardianship.

Ryan testified Glenn was competent throughout the guardianship and never questioned his activities. There was no contradictory evidence by respondent. In fact, neither the personal representative of the estate nor any other relatives of Glenn appeared at the hearings.

Ryan testified the estate earned an effective rate of return of 8.52%, or $21,000

during the guardianship. He was aware that a sum of $100,000 invested in a certificate of deposit could have earned 17% in International Falls during that time, and possibly more in the cities.

Don Hamm, a CPA who does investment counseling and analysis, testified that interest rates were extremely high during this period. He devised a plan that would have earned the estate 15.9%, approximately $28,500 more than Ryan's management did. Hamm's plan would have liquidated the bonds and all accounts at the time of appointment, investing them in a $100,000 certificate of deposit in the metropolitan area. Hamm testified that the guardianship investments were close to being imprudent since they were not earning a reasonable rate of return for that marketplace.

Larry Duncan, a trust officer for Duluth Northwestern National Bank who handled 920 trust accounts, testified he believed Ryan acted in a prudent manner. Duncan said the type of investments he made depended on the age of the ward and the risk involved. Older wards preferred less risk.

The trial court found Ryan acted negligently in failing to review the accounts and reinvest them at higher rates, recommending Hamm's plan as a prudent one. The judge felt Ryan failed to show Glenn insisted on retaining the accounts. If she had, it was Ryan's obligation to petition the court for guidance. He disallowed Ryan's fees of $1,550, and surcharged Ryan and his surety $28,500.

## ISSUES

Was the evidence sufficient to support a finding that the guardian wrongfully and negligently mismanaged the guardianship funds?

## ANALYSIS

Minn.Stat. § 525.56, subd. 4(3) (1984), states that a guardian is to manage accounts in accord with Minn.Stat. § 48.84 (1984) and Minn.Stat. § 501.125, subd. 1 (1984). "The standard of a fiduciary shall be applicable to all investments by a guardian." Minn.Stat. § 525.56, subd. 4(3). Where no specific written directions are given, the guardian must use his "best judgment in the selection [of investments], and shall be responsible for the validity, regularity, quality, and value thereof at the time made * * *." Minn.Stat. § 48.84 (1984).

> Subd. 1. [A] trustee is authorized to acquire every kind of * * * investment * * * which an ordinarily prudent person of discretion and intelligence, who is a trustee of the property of others, would acquire as such trustee.

> Subd. 2. [A] trustee shall not be required to dispose of any * * * investment, in the trust, however acquired, until the trustee shall determine in the exercise of a sound discretion that it is advisable to dispose of the same, but nothing herein contained shall excuse the trustee from the duty to exercise discretion at reasonable intervals and to determine at such times the advisability of retaining or disposing of such property.

Minn.Stat. § 501.125 (1984).

The role of a guardian requires more than good faith and honest judgment. *Champ v. Brown,* 197 Minn. 49, 58, 266 N.W. 94, 98 (1936). The guardian's judgment must be guided by approved rules applicable to the investment of trust funds. *Id.* The funds must be guarded carefully and invested cautiously. *Id.* At the same time, the funds must be invested productively. *Crosby v. Merriam,* 31 Minn. 342, 17 N.W. 950 (1883). The guardian's duty is to protect his ward and her assets, and serve her best interests. *In re Estate of Schober,* 226 N.W.2d 895, 897–898 (Minn. 1975).

Appellant challenges Hamm's qualifications as an expert and the use of his testimony. The sufficiency of the foundation to qualify a witness as an expert is almost entirely within the trial court's discretion. *Jones v. Fleischhacker,* 325 N.W.2d 633, 640 (Minn.1982). Hamm had substantial accounting experience and investment experience. Although he had

never been a guardian, his testimony may be viewed as that of an expert on investment planning in the early 1980's. The trial court's decision that Hamm had the background necessary for a meaningful expert opinion was within the court's discretion. *See* Minn.R.Evid. 702, comment 1977.

In *Matter of Will of Gershcow,* 261 N.W.2d 335 (Minn.1977), the supreme court affirmed the denial of a petition challenging the trustee's management. The trust corpus consisted of savings accounts, one Series H bond, and a limited number of shares of common stock. The trust earned 5 to 5¼%. The petitioner (a remainder beneficiary) alleged the trust failed to earn an adequate yield of at least 6%. The district court noted that the trustee was a sister of the deceased, serving without compensation, who thought she was carrying out her sister's wishes. When the petition was brought, she put the money into four-year certificates of deposit. In light of all this, the supreme court found the district court did not abuse its discretion.

As in *Gershcow,* we have a trustee appointed at the request of the ward. He performed his duties faithfully as guardian of her person. He did not self-deal or commit fraud. He acted conservatively and safely in his investments, believing he was following the wishes of his ward.

■ Minnesota has not yet established different standards which would vary for guardians, dependent on their skills and experience. However, if Ryan was a professional guardian, or Glenn had not remained competent, we would scrutinize his activities more closely. But, where a family member or friend, as here, is appointed guardian at the request of the ward, follows her existing investment pattern, for a minimal fee, and is responsible for the ward's personal supervision as well as the estate, some allowances must be made.

■ Ryan obtained nearly a 9% rate of return. He earned $21,000 for Glenn's estate. While a higher return was possible, 9% is within a conservative reasonable range. Ryan's fees totalled only $1,550.

There is no evidence or suggestion that he intentionally mishandled or misappropriated the funds. Ryan was guardian of the person, as well as the property, of Rose Glenn. There is no indication that his actions were ever contrary to the wishes of his competent ward. In such a case, where the only allegation is that the funds could have earned more, we cannot hold that the evidence supports a finding that Ryan mismanaged the funds of his ward.

Ryan also objects to the timeliness of notice of a Michigan bank officer's deposition. In view of our decision on Ryan's management of his ward's funds, we need not reach this deposition issue.

### DECISION

The evidence does not support a finding that appellant wrongfully and negligently mismanaged the guardianship funds. The surcharge was improper and appellant is entitled to his fees. We remand for entry of order granting appellant his fees as guardian, and disallowing the award of costs to respondent.

Reversed and remanded.