**In the Matter of John ANDERSON.**

No. C8–85–380.

Court of Appeals of Minnesota.

May 7, 1985.

R. Thomas Greene, Jr., Minneapolis, for John Anderson.

Thomas L. Johnson, Hennepin Co. Atty., James R. Albrecht, Asst. Douglas J. McClellan, Asst. Minneapolis, for respondent.

Heard, considered and decided by POPO-VICH, C.J., FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

Anderson appeals a January 23, 1985 order for commitment to Anoka State Hospital. We affirm.

## FACTS

Anderson's sister Beverly D'Agostino petitioned for commitment and testified at the January 22 hearing on the petition. She testified her brother, who lives with his parents and two brothers, has not worked in five years. Anderson has lost a great deal of weight and is preoccupied with religion and nutrition. D'Agostino was concerned that her brother's inability to provide the necessities of life made him a danger to himself.

James Anderson, appellant's brother, testified appellant has become preoccupied with the Mormon Church and Marie Osmond. Appellant will not eat with other members of the family. He will eat in the middle of the night, but he then vomits the food. Because of appellant's refusal to eat properly, James Anderson testified appellant was a danger to himself.

Candace Kohls, a psychiatric registered nurse for Hennepin County, interviewed appellant in December 1984 to evaluate whether a petition for commitment was appropriate. Anderson talked to Kohls about Marie Osmond, telling her his name was mentioned in one of her record albums. Anderson told Kohls "some people" thought he was Jesus Christ and that the public library was "bugged." Anderson talked about starvation dieting and claimed he had eaten only bread for the past week and one half and a small amount of oatmeal in the prior 24 hours.

At the time of the first meeting with Kohls, Anderson agreed to consider alternatives less restrictive than commitment, including supervision by a public health nurse. However, he failed to follow through with an appointment and Kohls later concluded Anderson's nutritional habits and significant weight loss could pose a danger to his health.

Psychiatrist Carl Schwartz was appointed by the court to examine Anderson. He diagnosed Anderson as suffering from paranoid schizophrenia. He reported Anderson's mental illness is a thought disorder, which disturbs his judgment, appreciation of reality, and behavior. Although Schwartz found no medical evidence of disturbed nutrition, he testified Anderson, at 111 pounds and 5'9", was only 12 pounds from critical weight. Schwartz concluded there was a substantial likelihood Anderson would harm himself by failing to eat properly, refusing fluids, and continuing to lose weight. Anderson believed fasting would suppress aggression and sexual feelings. Schwartz testified that, during the seven-day hospitalization prior to the commitment hearing, Anderson lost 15 pounds, dropping from 126 to 111. Schwartz told the court Anderson required immediate treatment to bring his weight up and to stop him from fasting and refusing fluids.

The second examiner, physician John Curran, was appointed at Anderson's request. He agreed Anderson suffered from chronic paranoid schizophrenia which substantially disturbed his thoughts and impaired his judgment and capacity to recognize reality and to reason. He noted that Anderson goes on prolonged fasts and had lost a substantial amount of weight. However, Curran testified that, while Anderson was emaciated from fasting, his condition was not yet life-threatening. If Anderson resumed fasting, Curran estimated he could suffer irreparable nerve and heart damage within one month. Curran concluded Anderson required direct supervision to ensure he would not refuse fluids and food.

The trial judge recognized the conflicting testimony on how quickly Anderson's physical condition could become life-threatening. He observed that the availability of food at Anderson's family home did not prevent Anderson from fasting until his health was endangered. The court concluded Anderson was mentally ill and in need of treatment at Anoka State Hospital. Anderson appeals, arguing the trial court erred by finding he is mentally ill.

## ISSUE

Did the trial court properly conclude Anderson is mentally ill as defined by Minn. Stat. § 253B.02, subd. 13 (1984)?

## ANALYSIS

If the trial court finds, by clear and convincing evidence, that a proposed patient is mentally ill and there is no suitable alternative to judicial commitment, the trial court must commit the patient to the least restrictive treatment facility appropriate to the patient's needs. Minn.Stat. § 253B.09, subd. 1 (1984). Anderson does not contest the placement at Anoka State Hospital, but argues there was insufficient evidence to

support the court's finding of mental illness.

A "mentally ill person" is statutorily defined as a person with:

1) a substantial psychiatric disorder of thought, mood, perception, orientation, or memory, which

2) grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, and which

3) is manifested by instances of grossly disturbed behavior or faulty perceptions, resulting in

4) a substantial likelihood of harm to the proposed patient or others, demonstrated by a recent attempt or threat of harm or a failure to provide necessary food, clothing, shelter or medical care.

Minn.Stat. § 253B.02, subd. 13 (1984).

Anderson does not dispute the diagnosis of paranoid schizophrenia which grossly impairs his functioning, but he argues the trial court erred in finding he posed a substantial likelihood of harm to himself.

■ The trial court's commitment order must be "justified by findings based upon evidence at the hearing." Minn.R.Civ. Commitment 11.01. Those factual findings may not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01. The trial court's finding that Anderson's substantial weight loss and failure to provide either food or medical care for himself demonstrated a substantial likelihood he would harm himself is amply supported by the record and is not clearly erroneous. We do not agree with appellant the trial court was required to wait until Anderson suffered irreparable physical harm when he had already failed to provide necessary food and medical care.

### DECISION

The trial court properly found Anderson posed a substantial likelihood of physical harm to himself. Anderson satisfied the statutory definition of a "mentally ill person" and the criteria for commitment.

Affirmed.