**In the Matter of Lowell J. MALM.**

**No. C0–85–1541.**

Court of Appeals of Minnesota.

Nov. 5, 1985.

Allan R. Poncin, Minneapolis, for appellant Lowell J. Malm.

Thomas L. Johnson, Hennepin Co. Atty., Richard P. Osborne, Asst. Hennepin Co. Atty., Minneapolis, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and WOZNIAK and HUSPE-NI, JJ.

## OPINION

HUSPENI, Judge.

Malm appeals from a July 12, 1985 order finding him mentally ill and dangerous and committing him for an indeterminate period. We affirm.

## FACTS

Appellant has a history of mental illness and chemical dependency, including at least thirty-five admissions for treatment. He is consistently diagnosed as suffering from a bipolar affective disorder with paranoid and grandiose thoughts. In lay terms, appellant is described as a manic depressive person with an alcohol dependency problem.

Appellant was trained as a Lutheran minister and accepted a pastorate. During his first pastorate, he demonstrated signs of mental illness, and he resigned from the ministry in 1971. He subsequently developed an exaggerated hostility towards the Lutheran church ` and paranoia about church officials. His mental illness is exacerbated by alcohol use, which weakens his already impaired impulse control. He has been repeatedly treated for chemical dependency, with little success.

When appellant consistently takes his prescribed medication, his symptoms are remittent, although he is never free of the psychiatric disorder. When he stops taking the antipsychotic and antimanic medications, he is violent and his judgment is impaired. His thoughts, moods, and per-

ceptions are affected. He has threatened family members and others with a handgun, assaulted Lutheran ministers and family members, threatened to kill church employees and a psychiatrist who testified at the commitment hearing, and lit fires in a Chicago church and in jail in Illinois. The jail fire produced toxic fumes which endangered the lives of other inmates. Following every period of treatment to date, appellant has apparently stopped taking the prescribed medications which help to control his behavior and he has resumed drinking.

The trial court initially committed appellant as a mentally ill and dangerous person on April 25, 1985. While committed to the Security Hospital, appellant took medications and was not assaultive. Appellant's commitment was then reviewed by the trial court on July 11, 1985. Reports submitted to the court by a hospital psychologist and a psychiatrist confirmed appellant's diagnosis, his need for medications and the importance of his abstinence from alcohol.

Psychologist Douglas Fox testified that appellant has a major mental illness which impairs his mood and perceptions, although appellant has not recently been actively manic or assaultive. Social worker Carmen Madden interviewed appellant. Appellant talked to her about prior violence and his plan to hire a "hit man" to kill a well-known fundamentalist preacher. Appellant told Madden he loved alcohol and the excitement that goes along with drinking. He believed his "real problem" was an inability to talk to other people and develop friendships.

Psychiatrist Carl Schwartz appeared on behalf of appellant. He agreed that appellant has a bipolar affective disorder which results in disordered thought and violent behavior. Appellant's lack of effective impulse control appeared in the results of psychological tests reviewed by Schwartz. While at the Security Hospital and complaint with medications, appellant showed no symptoms of manic depression. However, Schwartz noted appellant complained of continued symptoms. Schwartz testified that even when appellant's mental illness is not active, he remains mentally ill.

Schwartz said that withdrawal of medications is certain to result in violent behavior and a reappearance of active mental illness. Schwartz concluded that appellant requires virtually 24-hour supervision to insure that he takes medications, participates in psychotherapy, and undergoes chemical dependency treatment and counseling. Although appellant claims he will voluntarily participate in such treatment, Schwartz told the court that "only God knows" how long appellant would stay with the program, in light of his failure to follow through on many similar past promises. Schwartz concluded that unless appellant's behavior changes significantly, he will act the same next year as he did last year. Finally, Schwartz acknowledged that appellant is smart enough "to say anything he needs to say to get out of the Security Hospital."

The trial court found that appellant is "clearly mentally ill," that "if left to his own volition he will discontinue his course of medications and he will use mood altering chemicals," and that there is a substantial likelihood appellant will cause serious physical harm to others if he discontinues his course of medications. The court committed appellant to the Security Hospital and this appeal followed.

## ISSUE

Did the trial court properly conclude that appellant was still mentally ill and dangerous at the time of the review hearing?

## ANALYSIS

■ After a patient is initially committed as a mentally ill and dangerous person, a treatment report is prepared by the treating facility and a final determination hearing is held. Minn.Stat. § 253B.18, subd. 2 (1984). If the trial court finds that "the patient continues to be mentally ill and dangerous, then the court shall order commitment of the proposed patient for an indeterminate period of time." Minn.Stat.

§ 253B.18, subd. 3 (1984). *See also In re Verhelst*, 350 N.W.2d 494 (Minn.Ct.App. 1984). The trial court found appellant continued to be mentally ill and dangerous. We will not disturb that finding unless it is clearly erroneous. Minn.R.Civ.P. 52.01.

The trial court recognized that during appellant's present commitment he has not evidenced dangerousness. The trial court's findings and order articulated the issue before it:

> The issue in this case can be simply stated: if a mentally ill person is not dangerous only so long as he takes his medications and refrains from using mood altering chemicals, should he be committed for an indeterminate time?
>
> An affirmative answer could mean lifetime commitments for numerous people who can maintain a safe and satisfying life style by continuing their courses of medications and not becoming intoxicated. A negative answer could mean serious injury to innocent persons by discontinuing their course of medication or becoming intoxicated.

Under the facts present here we cannot conclude that the trial court erred in determining that appellant continues to be mentally ill and dangerous.

A person is "mentally ill and dangerous to the public" if he is mentally ill and, as a result of that mental illness, presents a clear danger to the safety of others. Minn. Stat. § 253B.02, subd. 17 (1984). Dangerousness must be demonstrated by an overt act causing or attempting to cause serious physical harm to another and a substantial likelihood the person will engage in acts capable of inflicting serious physical harm on others. *Id.*

A mentally ill person has a substantial psychiatric disorder which grossly impairs his judgment, behavior, recognition of reality, or reason and understanding. Minn. Stat. § 253B.02, subd. 13 (1984). The mental illness must be manifested by grossly disturbed behavior or faulty perceptions and the person must pose a substantial likelihood of physical harm to himself or others. *Id.*

■ Appellant suffers from a bipolar affective disorder which impairs his judgment and behavior. He has paranoid thoughts. He believes his "real problem" is an inability to make friends, rather than mental illness. We recognize, as did the trial court, that when appellant complies with a medication regime and abstains from alcohol his symptoms go into remission. Such is the case at present. However, the mental illness continues and, if appellant fails to take medication or consumes alcohol, he will almost certainly experience a recurrence of his symptoms. His past behavior indicates that he does stop taking his medication and return to using alcohol when free to do so and then his symptoms do recur.

■ Further, we note that "[a]t the [review] hearing, the court may consider the findings of fact made following the original commitment hearing, and other competent evidence relevant to respondent's present need for continued commitment." Minn.R.Civ. Commitment 12.06. Implicit in Rule 12.06, we believe, is the recognition that a patient may become symptom-free during hospitalization, and that, therefore, it is appropriate to consider precommitment behavior. Thus, we cannot accept appellant's contention that because he is presently symptom-free he must be discharged. The trial court's initial commitment order found that appellant committed a number of overt acts which caused or were an attempt to cause serious physical harm to others, including setting a fire in his Illinois jail cell, assaulting two ministers, and threatening his brother and a psychiatrist. The evidence presented to the trial court also established a substantial likelihood of future acts by appellant which would be capable of inflicting serious physical harm on others. *See* Minn.Stat. § 253B.02, subd. 17.

### ·DECISION

The trial court properly concluded that appellant was still mentally ill and dangerous at the time of the review hearing.

Affirmed.