**In the Matter of Christon TERRA.**

**No. C1–87–1360.**

Court of Appeals of Minnesota.

Sept. 22, 1987.

Dwight J. Leatham, Leatham & Hale, Minneapolis, for appellant Christon Terra.

Thomas L. Johnson, Hennepin Co. Atty., James R. Albrecht, Donna C. Falk, Asst. Co. Attys., Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant was arrested and charged with disorderly conduct and trespass when he refused to leave the offices of WCCO Television. A psychologist appointed by the criminal division concluded appellant was not competent. Further criminal proceedings were stayed and appellant was referred to the mental health division for commitment proceedings. Appellant now seeks review of an April 14 order committing him as a mentally ill person. We affirm.

## FACTS

Appellant's name from birth was Alfred Travis, Jr. About 1984 he began using the name Christon Terra, the name of a movie character portrayed by musician and actor Prince.

In 1986 appellant became convinced he was married to Colleen Needles, a local television anchor. Needles became alarmed at appellant's insistence to see her and circulated appellant's description to security and reception personnel at the station's downtown Minneapolis offices. Barbara Haglund, the building services manager at WCCO Television, testified appellant came to the station on March 24, 1987 and insisted on seeing his "wife." Haglund told him the person he was looking for was not his wife and not in the building. Appellant refused to leave and Haglund locked the inner doors to prevent him from gaining further entrance. Appellant left the building and went to another station door. Haglund alerted the receptionist, requested several employees to go to the front lobby, and called police.

After appellant left the building, Colleen Needles arrived with her husband. Appellant returned and refused to leave until police arrested him. Police reports indicate appellant became belligerent. Police assistance was required to subdue him.

Appellant's competence was questioned after being charged with disorderly conduct and trespass. A court psychologist

concluded appellant could not understand the criminal proceedings or participate in his defense and was unlikely to "attain competency to proceed until psychiatric intervention occurs." The district court referred appellant for commitment proceedings and stayed further action on the criminal charges.

Cynthia Brunier, a registered psychiatric nurse with 10 years experience, interviewed appellant as part of the pre-petition screening process. Appellant insisted he was married to Needles, had children with her, and believed there was a conspiracy to keep them apart, to harm Needles, and he must protect her from danger.

Brunier testified appellant became hostile whenever questioned about his claimed marriage. Because of appellant's obsession, Brunier believed he presented a danger to himself and Needles and recommended hospitalization at Anoka Metro Regional Treatment Center.

Court-appointed examiner, psychologist James Jacobson, examined appellant after reviewing medical records from appellant's stay at Hennepin County Medical Center. Jacobson concluded appellant suffered from paranoid schizophrenia, a substantial psychiatric disorder, which had persisted for at least one and one-half years. As examples of appellant's thought disorder, Jacobson described appellant's belief he was required to save Prince from the Antichrist (also confirmed by appellant's sister) and appellant's fixed delusion concerning his "marriage."

Jacobson testified (1) appellant's name change indicated extreme unconscious anxiety and the need to deny his own identity, (2) appellant disliked his true identity so much he could injure himself, (3) appellant's thoughts, mood, perception, and memory were affected by the psychosis, and (4) his judgment, behavior, ability to recognize reality, and capacity to reason and understand were grossly impaired.

The examiner concluded appellant posed a danger to others, "as a result of his very tight delusional system * * *." In his efforts to "protect" others not in need of protection, Jacobson warned appellant and others could be harmed. At the commitment hearing, Jacobson explained (1) appellant could become more and more protective of his "wife" as his delusions expanded, (2) appellant believed voices were telling him to protect Needles, and (3) a spontaneous remission of the mental disorder was "very unlikely." He recommended long-term hospitalization and treatment.

Appellant's sister testified regarding her brother's belief he had been chosen to "save" Prince and his earlier belief he was married to an aerobics instructor at his health club. The sister testified appellant has never been married, apparently sleeps in a park rather than staying with family, and has no job.

The trial court concluded appellant met the statutory definition of a mentally ill person posing a danger to himself or others as a result of his continuing efforts to reach his "wife." Appellant was committed on April 14, 1987 and this appeal followed.

## ISSUES

1. Did the trial court err in committing appellant as a mentally ill person?

2. Was appellant denied an impartial forum because the referring judge and the committing judge were from the same judicial district?

## ANALYSIS

 1. Appellant argues there was insufficient evidence he "poses a substantial likelihood of physical harm to self or others * * *." *See* Minn.Stat. § 253B.02, subd. 13 (1986). This court will not reverse the trial court's findings of fact unless they are clearly erroneous. Minn.R.Civ.P. 52.01.

The likelihood of harm must be demonstrated by a recent attempt or threat of harm to the proposed patient or others *or* a failure to obtain necessary food, clothing, shelter, or medical care. Minn.Stat. § 253B.02, subd. 13. The trial court found appellant has been unable "to provide for basic physical needs" and his recent "hostile, aggressive and intrusive" behavior "required the use of physical force to ac-

complish his removal" from WCCO Television. The trial court's finding that "it is highly likely that others will be hurt by [appellant's] efforts to get to [Needles] or that he will be hurt by others while trying to act on his delusion" is supported by ample evidence.

Appellant claims his satisfactory physical condition on admission to the hospital showed that he was able to care for himself. However, there was also testimony appellant has no income and refused to live with family members, preferring to sleep in a park.

The trial court also found the likelihood of harm had been shown by appellant's hostile and aggressive behavior at the television station. The trial court was not required to delay commitment until appellant or someone else was actually harmed, "so long as the danger of appellant's condition had already become evident." *In re Harvego*, 389 N.W.2d 266, 268 (Minn.Ct. App.1986) (citing *In re Anderson*, 367 N.W.2d 107, 109 (Minn.Ct.App.1985)). "The statute requires only that an individual pose a threat of harm to others *or* himself." *In re Burmeister*, 391 N.W.2d 89, 91 (Minn.Ct.App.1986) (emphasis in original).

Appellant contests the trial court's finding his psychiatric disorder has been manifested by faulty perceptions, including his fixed delusion regarding his "marriage." Appellant claims failure to call Needles to testify regarding whether she and appellant "were or had been married" deprived him of due process. The testimony of a co-worker who knows Needles' husband, and appellant's sister, who told the court appellant had never been married, supported the finding. Although questioned repeatedly on his claim, appellant was unable to explain when or where he was allegedly married. The trial court's findings regarding appellant's faulty perceptions, his fixed delusions, and the likelihood that he poses a danger of harm to himself or others are not clearly erroneous.

■ 2. In his closing trial argument, appellant's counsel first claimed appellant was denied due process because the presiding judge was from the same judicial district as the judge who stayed the criminal proceedings and petitioned for appellant's commitment. If the trial court where criminal proceedings are pending finds that a "defendant is mentally ill so as to be incapable of understanding the proceedings against him or participating in his defense" and the defendant is not already under commitment, "the court shall cause civil commitment proceedings to be instituted against him." Minn.R.Crim.P. 20.01, subd. 4(2)(a).

A petition initiates commitment proceedings. It may be filed by any interested person and it must generally be supported by a statement of an examiner recommending commitment. Minn.Stat. § 253B.07, subd. 2. The definition of "interested person" includes public officials. Minn.Stat. § 253B.02, subd. 10. The petition submitted by the judge before whom criminal proceedings were pending was accompanied by the statement of an examiner. "If a *court* petitions for commitment pursuant to the rules of criminal procedure * * * the prepetition investigation * * * shall be completed within seven days after the filing of the petition." Minn.Stat. § 253B.07, subd. 1(f) (emphasis added).

The trial court strictly followed the statutory procedures. Whether judges who refer defendants for commitment proceedings *should* be the petitioners is an issue to be properly addressed by the legislature. There is no allegation the referring court took any part in the commitment proceedings or exercised any influence. We conclude appellant's claim he was deprived of an impartial tribunal is without merit.

### DECISION

Appellant was properly committed as a mentally ill person.

Affirmed.