In the Matter of Wayne Patrick **CLEMENTS.**

No. CO–89–138.

Court of Appeals of Minnesota.

May 23, 1989.

Review Denied June 21, 1989.

Gerald M.B. Chester, Minneapolis, for appellant Clements.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Coleen M. Brady, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by FOLEY, P.J., and NIERENGARTEN and IRVINE, JJ., without oral argument.

## OPINION

FOLEY, Judge.

Wayne Patrick Clements appeals from an order continuing his commitment as a psychopathic personality. We affirm.

## FACTS

In April 1988, Clements was committed to the Minnesota Security Hospital as a psychopathic personality. Clements appealed his commitment to this court, and we affirmed by an unpublished opinion. *In re Clements*, No. CX–88–1058, 1988 WL 75547 (Minn.Ct.App. July 26, 1988).

On August 19, 1988, the district court conducted a 60–day review hearing on the issue whether Clements' commitment as a psychopathic personality should be indefinitely continued. *See* Minn.Stat. § 253B.18, subds. 2, 3 (1988). Four experts testified at the hearing. Dr. Roger C. Sweet, a licensed consulting psychologist, testified as the court-appointed examiner. Dr. Sweet had also testified as the court's examiner at Clements' initial commitment hearing.

Clements' attorney objected to Dr. Sweet's qualifications, claiming he did not have the requisite expertise in the area of serious adult sexual offenders. Dr. Sweet admitted that he had no specific training in the area of violent sexual offenders, and that he had no prior experience treating persons with psychopathic personalities.

He indicated, however, that in the past he has worked with violent adolescent sex offenders. He currently practices in the diagnosis and treatment of mental illness, and has served on the panel of court-appointed examiners for Hennepin County District Court for approximately eight years.

The district court overruled Clements' objection to Dr. Sweet's qualifications and allowed the doctor to testify. Dr. Sweet stated that he reviewed Clements' treatment records and interviewed him in June 1988 to determine whether he continued to meet the criteria for a psychopathic personality. Dr. Sweet testified that there had been no particular changes since Clements' initial commitment, and that his condition basically remained the same.

Dr. Sweet testified that Clements continued to be emotionally unstable, continued to lack customary standards of good judgment, and failed to appreciate the consequences of his actions, rendering him irresponsible for his conduct with respect to sexual matters and dangerous to other persons.

Dr. Sweet explained that Clements' last two offenses before his commitment supported his conclusion that Clements is dangerous and that his behavior is escalating. Dr. Sweet stated that while an exhibitionist will usually expose himself at a relatively safe distance and leave the scene upon receiving the desired response, Clements did not do that during the last two incidents before his commitment:

> Those particular incidents of exposure were qualitatively different than other examples of exposure he engaged in. They were direct confrontations with victims and in one instance he made physical contact with the victim. That's dramatically different than * * * most of his previous exhibitionistic behavior and dramatically different than the behavior of most exhibitionists.

While Dr. Sweet admitted that Clements had not engaged in any dangerous behavior since those last two incidents, he noted that Clements had been confined in structured treatment settings.

Richard Seely, the Director of the Intensive Treatment Program for Sexual Aggressives (ITPSA) at the Minnesota Security Hospital, testified that he did not recommend commitment as a psychopathic personality. Seely testified that he and the ITPSA treatment team did not believe Clements was dangerous "except in a speculative kind of way". According to Seely, Clements was not completely emotionally stable, but the ITPSA team did not believe his judgment rendered him incapable of understanding the consequences of his behavior. Seely also speculated that if involuntarily committed to the ITPSA program, Clements would probably be unable to participate in treatment for very long.

Douglas Fox, a licensed psychologist at the Minnesota Security Hospital and a member of Clements' treatment team, testified on Clements' behalf. Fox had also testified at Clements' initial commitment hearing and had not supported the petition for commitment as a psychopathic personality.

At the hearing on Clements' continued commitment, Fox testified that the treatment team did not support continued commitment as a psychopathic personality because the team did not believe Clements' past conduct was dangerous. Fox explained that Clements had not seriously harmed anyone in the past, and the team could not actually predict that he would harm anyone in the near future. Fox also stated that Clements seems to appreciate the consequences of his acts and has some control over his behavior.

Fox recommended that Clements receive treatment for his exhibitionism through the ITPSA program and admitted that if left to his own devices, Clements would probably not continue voluntary treatment.

Dr. James Jacobson, a psychologist in private practice, had also testified at the initial hearing on Clements' commitment, stating that Clements exhibited the "least amount of control" over his exposing and masturbating, but had control over some of his fantasies. At the hearing on Clements' continued commitment, Jacobson testified that he had seen Clements since his commitment and had reviewed Clements' records. Jacobson testified that he did not believe Clements fit the statutory definition of a psychopathic personality because he had not actually harmed anyone and did not intend to harm anyone.

Following the hearing, the trial court issued its findings of fact and conclusions of law, determining that Clements met the definition of a psychopathic personality and should be committed to the Minnesota Security Hospital for an indeterminate period of time. The court's decision was based in part upon a finding that "[l]ittle if anything, about [Clements'] condition has changed during the four months between his commitment and this hearing date."

Clements has appealed from the court's order, arguing that the evidence was insufficient to sustain the court's determination that he is a psychopathic personality.

## ISSUES

1. Did the trial court abuse its discretion by concluding Dr. Sweet was qualified to testify as an examiner?

2. Does the record support the trial court's determination that Clements is a psychopathic personality requiring indeterminate commitment?

## ANALYSIS

1. Clements challenges Dr. Sweet's qualifications as an examiner. We stated in *In re Harhut*, 367 N.W.2d 628 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. June 27, 1985):

"The sufficiency of the foundation to qualify a witness as an expert is almost entirely within the trial court's discretion."

*Id.* at 632 (quoting *In re Guardianship of Glenn*, 363 N.W.2d 348, 350 (Minn.Ct.App. 1985)). Citing *Harhut*, we stated in *In re Dibley*, 400 N.W.2d 186 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. March 25, 1987):

Objections to an examiner on grounds of inadequate experience treating patients similar to the proposed patient are "more

pertinent to the weight to be afforded the testimony than to its admissibility." *Id.* at 191.

█ The standard on appeal is whether the court abused its discretion in concluding the examiner was qualified to testify. *See id.* We conclude the court did not abuse its discretion in determining Dr. Sweet was qualified to testify as an examiner.

2. Minn.Stat. § 526.09 (1988) defines the term "psychopathic personality" as

the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any such conditions, as to render such person irresponsible for personal conduct with respect to sexual matters and thereby dangerous to other persons.

In *State ex rel. Pearson v. Probate Court of Ramsey County*, 205 Minn. 545, 287 N.W. 297 (1939), the court explained the legislature's definition of a "psychopathic personality":

[T]he language * * * of the act is intended to include those persons who, by an habitual course of misconduct in sexual matters have evidenced an utter lack of power to control their sexual impulses and who as a result are likely to attack or otherwise inflict injury, loss, pain, or other evil on the objects of their uncontrolled and uncontrollable desire.

*Id.* at 555, 287 N.W. at 302. The *Pearson* court cautioned, however, that it "would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities." *Id.*

A person committed as a psychopathic personality is subject to the provisions of the Minnesota Commitment Act that apply to persons who are committed as mentally ill and dangerous to the public. Minn.Stat. § 253B.02, subd. 17 (1988). Accordingly, the petitioner must establish by clear and convincing evidence that a person is a psychopathic personality. Minn.Stat. § 253B.18, subd. 1 (1988); *In re Martenies*,

350 N.W.2d 470, 472 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984). Clements argues the county failed to meet this burden.

This court stated in *Martenies:*

When evidence as to the existence of a psychopathic personality is in conflict, the question is one of fact to be determined by the trial court upon all the evidence.

*Id.* (citing *Dittrich v. Brown Co.*, 215 Minn. 234, 9 N.W.2d 510 (1943)). Where the court's findings of fact are derived almost entirely from expert opinion testimony, the trial court's determination is of particular significance. *In re Joelson*, 385 N.W.2d 810, 811 (Minn.1986).

█ On appeal, the standard of our review is limited to determining whether the trial court's findings of fact are supported by the record as a whole and are not clearly erroneous. *See Joelson*, 385 N.W.2d at 811 (citing *Johnson v. Noot*, 323 N.W.2d 724 (Minn.1982)). Here, although three experts testified that Clements is not a psychopathic personality, testimony by the court-appointed examiner, Dr. Sweet, supports the court's determination that Clements is a psychopathic personality.

Clements argues that he has never actually inflicted injury or acted on his threats of sexual harm. In *In re Terra*, 412 N.W.2d 325 (Minn.Ct.App.1987), involving commitment of a mentally ill person, this court stated:

The trial court was not required to delay commitment until appellant or someone else was actually harmed, "so long as the danger of appellant's condition had already become evident."

*Id.* at 328 (quoting *In re Harvego*, 389 N.W.2d 266, 268 (Minn.Ct.App.1986) (citing *In re Anderson,* 367 N.W.2d 107, 109 (Minn.Ct.App.1985)). Here, likewise, the trial court was not required to wait until Clements actually harmed someone.

We noted in *In re Malm*, 375 N.W.2d 888 (Minn.Ct.App.1985), that at a review hearing " 'the court may consider the findings of fact made following the original commitment hearing, and other competent evi-

dence relevant to respondent's present need for continued commitment.'" *Id.* at 891 (quoting Minn.R.Civ.Commitment 12.-06). The *Malm* court indicated that it is appropriate to consider a patient's behavior prior to his initial commitment. Here, the trial court found after the initial commitment hearing that Clements was a psychopathic personality and posed a danger to others. This determination was reviewed and affirmed on appeal. At the review hearing, Dr. Sweet specifically testified that Clements' condition has not changed since the time of his initial commitment.

## DECISION

The trial court did not err by allowing its examiner to testify. The examiner's testimony supports the determination that Clements is a psychopathic personality requiring indeterminate commitment.

Affirmed.

IRVINE, J., dissents.

IRVINE, Judge, dissenting.

I respectfully dissent.

It is undisputed that for at least the last 10 years, Wayne Clements has engaged in conduct that makes a normal person's skin crawl (exposing himself while masturbating). It is easy to lose one's objectivity while dealing with such a highly emotional situation.

The question is not whether the prosecuting attorney and/or the trial judge would personally feel threatened or endangered if confronted with such disgusting behavior; the question is whether Clements is a psychopathic personality and dangerous to the general population, or at least to the female portion thereof. That is probably why there is a provision for the use of the testimony of expert witnesses by both sides in such cases. But the experts should be genuine, and not chosen to bolster the already-determined opinion of either side. It is interesting to note that one of the county's experts, Richard Seely, did not agree with the county's opinion that the respondent-appellant, Clements, is dangerous within the meaning of the statute and should receive an indeterminate commitment to the State Security Hospital in St. Peter.

The court-appointed expert was Dr. Roger Sweet. It is true that the determination as to whether a witness is qualified to testify as an expert is almost solely within the province of the trial court; however, the weight to be given his or her testimony should be determined by the extent of his or her qualification. In my opinion, the full faith and credit given by the trial court to his testimony far exceeded the qualification of Dr. Sweet, who had never before been involved in examining an adult alleged psychopathic personality. The objectivity of the testimony of experts Richard Seely and Douglas Fox was weakened by their very familiarity with the inner workings of the state institution at St. Peter; but both agreed that Clements was not a psychopathic personality and should not be given an indeterminate commitment.

The best qualified expert, in my opinion, for a case such as this, was Dr. James Jacobson, who had experience working with truly dangerous psychopathic personalities serving time in state prisons for murder and other violent crimes. In his opinion, Clements' condition did not qualify as psychopathic personality, and did not warrant an indeterminate commitment, which is the closest thing to a life sentence we have in Minnesota today. Even a murderer can look forward to a parole after 17 years, in a manner best characterized by that much-misused word, "hopefully."

We should not ignore the references in the testimony to "warehousing" and "hopelessness." The diagnosis for Clements under an indeterminate commitment is that he would lose hope and be warehoused, i.e. consigned to the class of the hopeless, which would mean that on the "treatment" side he would be sedated enough to keep him from becoming violent, and be permitted to "exist" in the institution until he died a natural death or ended his own life.

The most unjust thing that could happen to Clements at this point would be for this court to use the trial court's original order of commitment and this court's affirmance

of that order to rubber-stamp the outcome of the 60–day hearing, and thus deprive Clements of the protection the legislature intended to give him by statute, a course of action advocated by the prosecuting attorney and not discouraged by the trial court. Because of the prosecutor's reference to the first order and its affirmance, I have made a thorough examination of the transcripts of both hearings. It seems clear from both records that there are treatment plans that would be effective in Clements' case, and that the indeterminate commitment could be used as a threat to encourage him to complete the treatment.

I would reverse.