*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0394**

In the Matter of the Civil Commitment of: Terry Lee Branson.

**Filed August 17, 2015
Affirmed
Reilly, Judge**

Anoka County District Court
File No. 02-PR-08-613

Brian C. Southwell, Minneapolis, Minnesota (for appellant Terry Lee Branson)

Tony Palumbo, Anoka County Attorney, Brianne J. Buccicone, Francine Pawelk Mocchi, Assistant County Attorneys, Anoka, Minnesota (for respondent Anoka County)

Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Stoneburner, Judge.[*]

## UNPUBLISHED OPINION

**REILLY**, Judge

Appellant Terry Lee Branson challenges his commitment as a sexually dangerous person (SDP) and as a sexual psychopathic personality (SPP) on the grounds that (1) the district court erred in determining that his conduct was sexually motivated or had sexual assault as a goal, and (2) the commitment petition violates double jeopardy. We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

# FACTS

**Criminal History**

Appellant was born on January 8, 1955, and has a long history of sexual misconduct, including 20 to 30 sexual assaults and 6 felony convictions for harmful sexual conduct. The first conviction arose from an incident in August 1976, when appellant drove to his aunt's home, threatened her with a knife, and raped her repeatedly over a period of hours, forcing oral and vaginal sex on her. Appellant raped his aunt in the presence of her mother-in-law, whom he tied up with nylon stockings, in a seated position, for the duration of the attack. In February 1977, appellant was convicted of rape in Hendricks County, Indiana, and sentenced to seven and a half years' imprisonment. Appellant was released from prison in July 1980 and moved to Minnesota.

The second offense occurred in March 1983. Appellant was living with his girlfriend and her roommate, V.S. Appellant tied up his girlfriend with her neck, hands, and feet bound together. Appellant then entered V.S.'s bedroom and raped her vaginally. After raping her, appellant grabbed V.S.'s arm and head, pulled her hair, and threw her into his bedroom with his girlfriend. Appellant attempted to force his girlfriend to perform oral sex on V.S., but she refused. Appellant then forcibly raped V.S. in front of his girlfriend. The state charged appellant with third-degree criminal sexual conduct. Appellant admitted that he entered V.S.'s bedroom while she was sleeping, intentionally confined her without her consent, and prevented her from leaving. Appellant entered a plea of guilty to the lesser charge of false imprisonment and was sentenced to a 13-month

suspended sentence with 90 days in jail and three years on probation. In April 1984, appellant's probation was revoked and his 13-month sentence was executed.

Approximately three months after his release on the false imprisonment charge and while he was still on probation, appellant committed another violent sex offense. In November 1983, appellant broke into a woman's apartment, grabbed her and shoved her into the wall, pulled her hair, and forced her into the kitchen. The woman, T.E., recognized appellant as someone who had worked for her landlord. Appellant took a 14-inch knife from the kitchen, held the knife against T.E.'s throat, and ordered her to undress. When she refused, appellant pressed the knife tighter to her throat and threatened to kill her. Appellant forced T.E. to give him oral sex and raped her. Appellant then forced T.E. outside and raped her again. Appellant was charged with two counts of first-degree criminal sexual conduct and pleaded guilty to one count of first-degree criminal sexual conduct. He was sentenced to a double durational departure of 162 months in prison. We affirmed the sentence on appeal. *Branson v. State*, 368 N.W.2d 436 (Minn. App. 1985). Appellant was released from prison in November 1992 with an expiration of sentence date of May 1997.

In December 1993, appellant spent the day drinking and going to different bars. After closing time, appellant waited outside a bar holding a large knife that he had brought with him. A female bartender, K.M., came out of the bar and began walking toward her car. Appellant came up behind her, grabbed her by the hair, and pressed a knife to her throat. Appellant stated he needed a hostage and threatened to cut her throat if she did not get in the car. Another employee came out of the bar and pushed appellant

3

hard enough to allow K.M. to run back inside and call the police. When the police officers arrived, appellant attempted to stab the officer and then threatened to kill himself and began stabbing himself in the chest and in the throat. The state charged appellant with two counts of second-degree assault and attempted kidnapping. Appellant pleaded guilty to the charges and was sentenced to ten years on the attempted kidnapping conviction and seven years on each of the assault convictions, to be served consecutively. We reversed the district court's decision that the kidnapping and assault sentences on K.M. could be served consecutively and reduced the sentence from 288 months to 204 months. *State v. Branson*, 529 N.W.2d 1 (Minn. App. 1995), *review denied* (Minn. Apr. 18, 1995).

**Treatment History**

Appellant has a long history of treatment for sexual abuse crimes. Between July 1985 and March 1986, appellant had four sessions with a psychologist, to whom he admitted that he was a recidivist sex offender. The therapist doubted appellant's motivation and viewed him as a "very antisocial personality." Appellant subsequently rejected treatment in the sex-offender treatment program.

Appellant later began the Assessment Phase in the Complex I treatment program in May 1986. He admitted to a history of 20 to 30 sexual assaults, usually involving rape or attempted rape of a relative or acquaintance, and confessed that he had no remorse for his actions. In May 1987, he completed chemical dependency treatment and transferred to the sex-offender treatment group. He voluntarily left the program in October 1987. Appellant entered the Transitional Sex Offender Program in August 1991 and asked to be

4

discharged from the program in July 1992, believing he had gone as far as necessary. However, a therapist evaluating appellant reported that he was at an extremely high risk to reoffend.

Following the December 1993 offense, the district court ordered appellant to participate in sex-offender treatment. Appellant refused to participate in his treatment and, as a result of his refusal, the state extended his incarceration on four different occasions. In March and April 1994, Peter Marston, Ph.D., conducted a psychological evaluation to consider, among other things, whether the December 1993 offense was a failed attempt to commit another sex offense. Appellant denied the offense was a failed rape attempt and claimed he was seeking to hijack a car and that it was merely coincidental that his victim was a female. The evaluator concluded that if appellant had actually abducted K.M., he may "very well have impulsively decided to rape her." Likewise, a psychological evaluator in 2001 concluded that appellant had not successfully integrated the prevention strategies he learned in treatment and suggested that appellant would have sexually assaulted K.M. if he had managed to abduct her.

**Current Commitment**

In September 2008, the department of corrections referred appellant to the county attorney for consideration of Sexually Dangerous Person/Sexual Psychopathic Personality (SDP/SPP) civil commitment. A recommendation to the commissioner of corrections from independent legal counsel reached the opinion that: (1) a course of harmful sexual conduct was present, (2) appellant had a sexual, personality, or other disorder or dysfunction, (3) appellant showed a lack of adequate control of sexual

5

impulses, and (4) appellant was highly likely to engage in harmful sexual conduct. The independent legal counsel concluded that there were sufficient grounds to consider filing a petition seeking to commit appellant as an SDP. The petition, filed in October 2008, sought to commit appellant as an SPP and an SDP.

The district court appointed two independent examiners, Dr. James H. Gilbertson, Ph.D., L.P. and Dr. Thomas Alberg, Ph.D., L.P. Appellant refused to meet with Dr. Gilbertson, who subsequently based his opinions on an extensive review of appellant's records. Appellant did agree to speak with Dr. Alberg. Both examiners determined that if appellant had successfully abducted K.M., it is highly likely he would have sexually assaulted her. Dr. Gilbertson concluded that appellant suffered from paraphilia, non-consent, a trait that overlaps with sexual sadism, based on appellant's criminal sexual behavior, his preoccupation with sexual assault fantasies, his admission that he sexually assaulted 20 to 30 women, and his statements that sexual assault gives him a thrill that cannot be duplicated in nonviolent sexual activity. Similarly, Dr. Alberg diagnosed appellant with sexual sadism, in which an individual derives sexual excitement from the psychological or physical suffering of the victim. The evaluators concluded that appellant "manifested a sexual, personality, or other mental disorder or dysfunction that does not allow him to adequately control his sexual impulses."

The district court held a trial in January 2009 and issued a commitment order in June 2009, concluding that appellant's conduct in December 1993 "was motivated by his sexual impulses and was part of a pattern of behavior that had criminal sexual conduct as a goal," and therefore met the statutory definition of harmful sexual conduct. The district

court found by "clear and convincing evidence" that appellant engaged in a course of harmful sexual conduct and was "highly likely" to reoffend. The district court concluded that clear and convincing evidence demonstrates that appellant is both an SDP and an SPP and committed appellant for treatment in the Minnesota Sex Offender Program (MSOP).

Appellant was transported to MSOP in October 2013, following completion of his criminal sentence. MSOP filed a 60-day report with the district court in December 2013 and the district court set a review hearing date. Psychologist Dr. Gary Hertog testified that appellant suffers from sexual sadism and continues to meet the statutory factors to qualify as both an SPP and an SDP. The district court issued its order on January 6, 2015, "indeterminably commit[ing]" appellant for treatment in MSOP. This appeal followed.

## D E C I S I O N

### I.

Appellant argues that the district court erred as a matter of law by determining that his assault and attempted kidnapping convictions arising from the December 10, 1993 incident were sexually motivated or had sexual assault as a goal. A petition for civil commitment as an SDP or an SPP must prove the elements of commitment by clear and convincing evidence. Minn. Stat. § 253D.07, subd. 3 (2014). On appeal, we will not set aside the district court's factual findings unless they are clearly erroneous, and we view the record "in a light most favorable to the district court's findings." *In re Ramey*, 648 N.W.2d 260, 269 (Minn. App. 2002). We also defer to the district court's opportunity to

7

judge the credibility of the witnesses. *Id.* However, we review de novo whether there is clear and convincing evidence in the record to support the district court's conclusion that appellant meets the standards for commitment. *In re Navratil*, 799 N.W.2d 643, 647 (Minn. App. 2011).

Appellant challenges the district court's finding that his conduct in December 1993 was sexually motivated or had sexual assault as a goal, as defined by Minn. Stat. § 253B.02, subd. 7a (2008).[1] "'Harmful sexual conduct' means sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another." Minn. Stat. § 253D.02, subd. 8a (2014). There is a rebuttable presumption that certain enumerated offenses, including criminal sexual conduct in the first, second, third, or fourth degrees, "creates a substantial likelihood that a victim will suffer serious physical or emotional harm." *Id.*, subd. 7a(b). This rebuttable presumption also applies to other conduct, including kidnapping and second-degree assault, "[i]f the conduct was motivated by the person's sexual impulses or was part of a pattern of behavior that had criminal sexual conduct as a goal." *Id.*

---

[1] In 2013, Minnesota Statutes chapter 253B, the Minnesota Commitment and Treatment Act, was amended and many of its provisions that applied to SDP and SPP cases were recodified in the newly enacted chapter 253D, the Minnesota Commitment and Treatment Act: Sexually Dangerous Person and Sexual Psychopathic Personalities. *See* 2013 Minn. Laws ch. 49, § 22, at 229 (recodifying Minn. Stat. § 253B.02, subd. 7a (2012) as Minn. Stat. § 253D.02, subd. 8a (Supp. 2013)). Although appellant cites to the 2008 version of Minnesota's civil commitment laws, because the recodification did not change the substance of the applicable sections, we cite to the most recent version. *See Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012).

Appellant's December 1993 crime did not involve criminal sexual conduct and can only be considered harmful sexual conduct if it was sexually motivated. Dr. Gilbertson and Dr. Alberg testified that if appellant had successfully abducted K.M., it is highly likely he would have sexually assaulted her. The district court found these opinions credible. The district court also found that appellant's assault and kidnapping convictions were, in fact, "motivated by his sexual impulses and [were] part of a pattern of behavior that had criminal sexual conduct as a goal," thus raising the rebuttable presumption that the victim suffered serious physical or emotional harm. The district court went on to conclude that clear and convincing evidence demonstrated that appellant was both an SDP and an SPP.

Appellant denies that the December 1993 offense was sexually motivated and claims that he was trying to find transportation home from the bar. However, the record amply supports the district court's finding that his crimes constitute harmful sexual conduct. The district court carefully identified appellant's history of six felony convictions arising out of conduct involving four separate incidents of harmful sexual conduct, including the sexual assaults committed against his aunt, his girlfriend's roommate, and T.E. These offenses involved both known and unknown victims, generally occurred when appellant was intoxicated, and involved physical restraints and threats with a knife. These incidents establish a habitual course of conduct and the 1993 offense followed the same pattern of behavior.

Appellant also argues that the district court erred in crediting the testimony of the examiners, Dr. Alberg and Dr. Gilbertson, who found that the December 1993 offense

9

was sexually motivated or part of a pattern of behavior with sexual assault as a goal. Both examiners concluded that appellant "manifested a sexual, personality, or other mental disorder or dysfunction that does not allow him to adequately control his sexual impulses." Further, both examiners agreed that if appellant had successfully abducted K.M., it is highly likely he would have sexually assaulted her.

Appellant argues that caselaw prohibits the district court from speculating on a chain of events. *See, e.g.*, *Matter of McGaughey*, 536 N.W.2d 621, 624 (Minn. 1995); *In re Rodriguez*, 506 N.W.2d 660, 663 (Minn. App. 1993). But the examiner's conclusions were not purely speculative. Appellant has a well-documented history of violent sexual assaults and his conduct toward K.M. was consistent with his earlier attacks. Appellant came up behind her, grabbed her by the hair, pressed a knife to her throat, attempted to force her into the car, and threatened to cut her throat with the knife if she did not comply. Although appellant did not sexually harm K.M., a district court "[is] not required to delay commitment until appellant or someone else was actually harmed, so long as the danger of appellant's condition had already become evident." *Matter of Clements*, 440 N.W.2d 133, 136 (Minn. App. 1989) (quotations omitted), *review denied* (Minn. June 21, 1989). The district court found that appellant's behavior toward K.M. "was motivated by his sexual impulses and was part of a pattern of behavior that had criminal sexual conduct as a goal," and the examiners' testimony supported the district court's determination that appellant is an SDP/SPP requiring commitment. On this record, we conclude that the district court did not clearly err.

**II.**

Appellant argues that the district court erred as a matter of law in denying his motion to dismiss the commitment petition because it violates his right to be free from double jeopardy under *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072 (1997). We review the constitutionality of a statute de novo. *Rew v. Bergstrom*, 845 N.W.2d 764, 776 (Minn. 2014). "Minnesota statutes are presumed constitutional and will be declared unconstitutional only when absolutely necessary." *State v. Grillo*, 661 N.W.2d 641, 644 (Minn. App. 2003) (quotations omitted), *review denied* (Minn. Aug. 5, 2003).

Appellant's challenge is meritless. The double jeopardy clause provides that a person shall not be "twice put in jeopardy of life or limb" for the same offense. *Hendricks*, 521 U.S. at 369, 117 S. Ct. at 2085. "Although generally understood to preclude a second prosecution for the same offense, the Supreme Court has also interpreted this prohibition to prevent the state from punishing twice, or attempting a second time to punish criminally, for the same offense." *Id.* (quotation omitted). The *Hendricks* decision determined that civil commitment proceedings "do[] not constitute a second prosecution." *Id.*, 117 S. Ct. at 2086. Two years prior to *Hendricks*, our supreme court likewise determined that civil commitment proceedings do not constitute double jeopardy because they are remedial rather than punitive in nature. *Call v. Gomez*, 535 N.W.2d 312, 319-20 (Minn. 1995).

In *In re Linehan*, our supreme court reconsidered its stance in light of the *Hendricks* decision. 594 N.W.2d 867, 871 (Minn. 1999). The *Linehan* court firmly established that "[t]he Supreme Court's reasoning supports our earlier ruling that the

11

[civil commitment statute] does not contravene the Double Jeopardy and Ex Post Facto Clauses." *Id*. Our supreme court determined that our civil commitment proceedings shared many elements in common with the statute at issue in *Hendricks*, including the fact that both were "in the civil commitment chapters of their statutes; neither requires a prior criminal conviction; neither includes a scienter requirement for commitment; and under both acts a person committed is to be released once he or she is sufficiently rehabilitated and can control his or her sexual impulses." *Id*. Thus, the supreme court concluded that there was no reason to modify its earlier position that civil commitment proceedings do not expose a defendant to double jeopardy. *Id*. at 872.

Appellant argues that, the *Linehan* decision notwithstanding, the civil commitment statute is punitive "in reality." Appellant has not cited to relevant authority in support of this position. *Linehan* remains good law in Minnesota and this court is bound by that decision. *See JPMorgan Chase Bank N.A. v. Erlandson*, 821 N.W.2d 600, 608 (Minn. App. 2012) (noting that this court is bound by Minnesota Supreme Court precedent).

**Affirmed.**